1
2
3
4
5
6                           UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
7                                    AT SEATTLE

8    JOSEPH LOCHUCH EWALAN,

9                            Petitioner,              Case No. C20-01497-JLR-SKV

10         v.                                         REPORT AND RECOMMENDATION

11   DON HOLBROOK,

12                           Respondent.

13

14        Petitioner, a state prisoner who is currently confined at Washington State Penitentiary

15   (WSP) in Walla Walla, Washington, seeks relief under 28 U.S.C. § 2254 from a 2016 Snohomish

16   County Superior Court judgment and sentence.  Dkts. 2, 13.  Petitioner filed an amended habeas

17   petition on January 5, 2021, Dkt. 13, which is the operative petition in this action.[1]  Respondent

18   has filed an answer to that petition and submitted relevant portions of the state court record and,

19   at the Court's direction, has submitted a supplemental answer further addressing limited issues

20   and additional relevant portions of the state court record.  Dkts. 34, 35, 68, 69.  Petitioner has

21   filed responses to Respondent's answer and to the supplemental answer.  Dkts. 40, 51, 71, 74.

22   Petitioner has also filed a "motion to order defendants to produce court of appeal transcript",

23

---

[1] The Court notes that because the amended petition is the operative petition in this action, it is referred to
as "the petition" in the discussion section of this Report and Recommendation.

REPORT AND RECOMMENDATION - 1

1    Dkt. 39, a "motion for leave to expand record under rule 7", Dkt. 58, and a "motion to expand

2    record re two items," Dkt. 59.  Respondent has filed oppositions to the motions and Petitioner

3    has filed replies.  Dkts. 41, 42, 60, 63.   Petitioner has also filed a "motion for plaintiff to file a

4    lawsuit" Dkt. 79.

5         Having considered the parties' submissions, the balance of the record, and the governing

6    law, the Court recommends that Petitioner's amended habeas petition, Dkt. 13, be DENIED, that

7    Petitioner's "motion to order defendants to produce court of appeal transcript", Dkt. 39, "motion

8    for leave to expand record under rule 7", Dkt. 58, "motion to expand record re two items", Dkt.

9    59, "motion for plaintiff to file a lawsuit" Dkt. 79, and his request for an evidentiary hearing be

10    DENIED, and that this action be DISMISSED with prejudice.  The Court further recommends

11    that a certificate of appealability be DENIED.

12                    I.    FACTUAL AND PROCEDURAL HISTORY

13        The Washington State Court of Appeals ("Court of Appeals"), on direct appeal,

14    summarized the facts relevant to Petitioner's conviction as follows:

15             Joseph Ewalan and Maureen Mwaniki married in Kenya in 2010. During
           that time Ewalan worked as a police officer. They immigrated to the United States
16           in 2011. Once here, Ewalan first worked as a security guard. Ewalan and Mwaniki
           had two children together. At the time of trial, their children were five and three
17           years old.

18             In 2015, Ewalan and Mwaniki began having problems in their marriage.
           Mwaniki testified that Ewalan threatened her, and she reported him to police
19           several times. Mwaniki moved out of their home and filed for a dissolution of the
           marriage. By court order, Ewalan had the children every other weekend and on
20           Thursday afternoons. The court order stated that Ewalan and Mwaniki would
           meet at McDonald's in Lake Stevens to exchange their children. The order also
21           dictated that Ewalan and Mwaniki were to communicate only by text or e-mail.

22             On the evening of November 12, 2015, Mwaniki went to the usual
           McDonald's to pick up the children from a Thursday afternoon with Ewalan.
23           Mwaniki testified that Ewalan approached her in the parking lot, yelling at her in
           Swahili. She testified that Ewalan then pulled out his gun and pointed it at her

REPORT AND RECOMMENDATION - 2

head. Mwaniki testified that she pushed Ewalan's shoulder and he shot the gun. Mwaniki did not see where the bullet went. Mwaniki then ran with her children into the McDonald's, yelling for help. Inside McDonald's, someone handed Mwaniki a phone to tell a 911 operator what happened.

Ewalan was charged with first degree assault domestic violence while armed with a firearm. Ewalan filed a motion for new counsel nearly seven months before trial commenced. About his attorney, Ewalan told the court, "I don't trust her anymore" and "it looks like she is working with the State." The court denied Ewalan's motion. Less than a month after his first motion, Ewalan again moved for new counsel. In his motion, Ewalan told the court that his counsel was "torn between the State and client she is supposed to represent." The trial court denied the motion.

The jury found Ewalan guilty. The court imposed a standard range sentence. [...]

Dkt. 35, Ex. 2 at 17-19.

Petitioner appealed from his conviction to the Court of Appeals, filing a brief through appellate counsel as well as a *pro se* statement of additional grounds. Dkt. 35, Exs. 3, 4, 5, 6, 7, 8. The Court of Appeals affirmed the judgment and sentence. *Id.*, Ex. 2.

Petitioner then sought review by the Washington Supreme Court. Dkt. 35, Ex. 8. The Washington Supreme Court denied review on September 5, 2018. *Id.*, Ex. 9. The Court of Appeals issued its mandate on September 21, 2018. *Id.*, Ex. 10. The United States Supreme Court denied Petitioner's petition for writ of certiorari on February 19, 2019. *Ewalan v. Washington*, 139 S. Ct. 1185 (2019). In March 2019, Petitioner filed a personal restraint petition (PRP) in the Court of Appeals. Dkt. 35, Exs. 11, 12, 13, 14, 15. The Court of Appeals dismissed the PRP and Petitioner sought review by the Washington Supreme Court. *Id.*, Exs. 16, 17, 18, 19.

The Commissioner of the Washington Supreme Court denied review. Dkt. 35, Ex. 20. Petitioner moved to modify the Commissioner's ruling and subsequently moved to add evidence to his motion to modify. *Id.*, Exs. 21, 22. The Washington Supreme Court denied the two

motions without comment.  *Id.*, Exs. 23, 24.  The Court of Appeals issued a certificate of finality on August 12, 2020.  *Id.*, Ex. 25.  On August 21, 2020, Petitioner filed a post-conviction motion in the superior court.  Dkt. 36, Exs. 26, 27; Dkt. 69, Ex. 52.  The superior court transferred the motion to the Court of Appeals for consideration as a PRP.  Dkt. 36, Exs. 28, 29, 30, 31, 32.  The Court of Appeals dismissed the PRP as time barred under RCW 10.73.090, and as a successive petition.  *Id.*, Ex. 33.  Petitioner then sought review by the Washington Supreme Court.  *Id.*, Ex. 34.  The Washington Supreme Court denied review on January 27, 2021, agreeing with the Court of Appeals that the PRP was untimely under RCW 10.73.090.  Dkt. 35, Ex. 35.  The Court of Appeals issued the certificate of finality on April 16, 2021.  Dkt. 36, Ex. 36.

On October 27, 2020, Petitioner filed the instant federal habeas action.  Dkt. 1.  Petitioner subsequently filed an amended habeas petition, which is the operative petition in this action.  Dkt. 13.  Respondent filed an answer and relevant portions of the state court record.  Dkts. 34, 35, 36.  Petitioner filed a response to the answer.  Dkt. 40.  By order dated January 20, 2022, the Court directed respondent to supplement the answer and the state court record on limited issues and set a briefing schedule.  Dkt. 67.  In response to the Court's order, Respondent filed the supplemental answer and supplemental state court record and Petitioner filed a response.  Dkts. 68, 69, 70, 71.  Petitioner has also filed the following motions: "motion to order defendants to produce court of appeal transcript", Dkt. 39, "motion for leave to expand record under rule 7", Dkt. 58, "motion to expand record re two items", Dkt. 59, and "motion for plaintiff to file a lawsuit" Dkt. 79.

## II.    GROUNDS FOR RELIEF

Petitioner identifies fourteen grounds for habeas relief which are summarized as follows[2]:

---

[2] The Court notes that there appears to be some overlap in some of Petitioner's claims.

1. The video deposition of Lieutenant Darrah contained false testimony and violated Petitioner's right to confront the witness.  The trial court abused its discretion by admitting Lieutenant Darrah's pre-recorded video deposition.  Counsel was ineffective for failing to adequately challenge Lieutenant Darrah's testimony.

2. The prosecution played the recording of a 911 call that the judge had ordered excluded in a pretrial ruling.

3. The trial court abused its discretion by admitting Lieutenant Darrah's video deposition and by commenting on the evidence.

4. Trial counsel provided ineffective assistance by not presenting a fingerprint expert to testify whether the victim touched the gun, and failing to interview potential witnesses Leigh Sweet, Officer Shein, and "K" and "A."  Appellate counsel provided ineffective assistance in failing to raise these issues on appeal.

5. The police unlawfully seized and conducted a warrantless search of Petitioner's cell phone.

6. Lieutenant Darrah presented false testimony about a man (identified as Petitioner), woman, and child leaving the McDonald's restaurant in a heated verbal argument, and about the man taking steps toward the center of the parking lot, pointing a gun in the general direction of the woman, and never holstering the weapon.

7. Trial counsel provided ineffective assistance by failing to call an expert to challenge the eyewitness testimony.

8. Trial counsel provided ineffective assistance by not interviewing or calling two lay witnesses, "K" and "A" to testify.

9.   The trial court erred by excluding evidence of Petitioner's good character.

10. The firearm accidentally discharged.

11. The firearm accidentally discharged in self-defense.

12. The judge erred in responding to a jury question about the instructions.

13. The judge erred by admitting evidence under Rule 404(b).

14. Racial discrimination in jury selection.

*See* Dkt. 13 at 6-38.[3]

### III.    DISCUSSION

A.   Exhaustion

Before seeking federal habeas relief, a state prisoner must exhaust the remedies available in the state courts.  The exhaustion requirement reflects a policy of federal-state comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation and citation marks omitted).

---

[3] To the extent Petitioner attempted to raise any *new or additional claims* (not raised in his amended petition) in his responses (Dkts. 40, 51, 71, 74) to Respondent's answer or supplemental answer, the Court has not considered them as they are not properly before the Court.  *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (finding that a claim raised for the first time in traverse may be disregarded; stating: "Traverse is not the proper pleading to raise additional grounds for relief.  In order for the State to be properly advised of additional claims, they should be presented in an amended petition or […] in a statement of additional grounds.").  Also, subsequent to filing his amended petition, Petitioner submitted several motions and filings (Dkts. 43, 45, 54, 64) which were somewhat unclear with respect to the relief they requested or their purpose.  The Court issued two orders addressing these motions in which it advised Petitioner it would consider the arguments raised in those filings in support of the *existing claims only* in his amended petition, and that if Petitioner intended to raise any *new claims* (in addition to the existing 14 claims in his amended habeas petition) he must move to amend his petition and comply with the requirements of Local Rule 15.  *See* Dkts. 62, 75.  Petitioner has not moved to further amend his petition.  Accordingly, the Court has considered the arguments in those filings (Dkts. 43, 45, 54, 64) only to the extent they relate to and support Petitioner's *existing claims* and, to the extent the filings attempted or intended to raise new claims for the first time, the Court has not considered them as they are not properly before the Court.

1    There are two avenues by which a petitioner may satisfy the exhaustion requirement.

2    First, a petitioner may properly exhaust his state remedies by "fairly presenting" his claim in

3    each appropriate state court, including the state supreme court with powers of discretionary

4    review, thereby giving those courts the opportunity to act on his claim. *Baldwin v. Reese*, 541

5    U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). "It has to be clear from the

6    petition filed at each level in the state court system that the petitioner is claiming the violation of

7    the federal constitution that the petitioner subsequently claims in the federal habeas petition."

8    *Galvan v. Alaska Dep't of Corrections*, 397 F.3d 1198, 1204 (9th Cir. 2005).

9    Second, a petitioner may technically exhaust his state remedies by demonstrating that his

10   "claims are now procedurally barred under [state] law." *Gray v. Netherland*, 518 U.S. 152, 162-

11   63 (1996) (quoting *Castille v. Peoples*, 489 U.S. 436, 351 (1989)); *see also Smith v. Baldwin*,

12   510 F.3d 1127, 1139 (9th Cir. 2007) (en banc). If the petitioner is procedurally barred from

13   presenting his federal claims to the appropriate state court at the time of filing his federal habeas

14   petition, the claims are deemed to be procedurally defaulted for purposes of federal habeas

15   review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A habeas petitioner who has

16   defaulted his federal claims in state court meets the technical requirements for exhaustion

17   because "there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501

18   U.S. 722, 732 (2007). Federal habeas review of procedurally defaulted claims is barred unless

19   the petitioner can either demonstrate cause for the default and actual prejudice as a result of the

20   alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

21   fundamental miscarriage of justice. *Id.* at 724.

22   Respondent concedes Petitioner has properly exhausted Grounds 1, 3-8, and 10-12, but

23   argues Petitioner has failed to properly exhaust Grounds 2, 9, 13, and 14. Dkt. 34 at 38-45.

1    Respondent further argues Grounds 2, 9, 13, and 14 are now technically exhausted and

2    procedurally defaulted, and that Petitioner fails to show cause or prejudice or that a miscarriage

3    of justice will result if those claims are not considered. *Id.*  As discussed below, the Court

4    concludes that Petitioner has properly exhausted Grounds 1, 3-8, and 10-12, but has failed to

5    properly exhaust Grounds 2, 9, 13, and 14.  The Court further concludes that Grounds 2, 9, 13,

6    and 14 are now technically exhausted and procedurally defaulted, and that the Court is barred

7    from considering them on federal habeas review.

8            1.      *Proper Exhaustion*

9                    a.      *Grounds 2, 9, 13, and 14*

10           Petitioner failed to properly exhaust Grounds 2, 9, 13, and 14 of his federal habeas petition

11   because he failed to fairly present them as federal claims at each level in the state court system.

12           With respect to Grounds 2, 9, and 14, Petitioner does not appear to have presented these

13   claims to either the Court of Appeals or the Washington Supreme Court on direct appeal.  *See*

14   Dkt. 35, Exs. 2-7.  Respondent notes in his answer to the petition that Petitioner might claim that

15   he raised some of these claims on direct review in his statement of additional grounds for review

16   and that those arguments were incorporated by reference in appellate counsel's petition for

17   review to the Washington Supreme Court.  Dkt. 34, at 42.  Respondent contends that such an

18   attempt to incorporate by reference does not constitute fair presentation of the claims to the

19   Washington Supreme Court.  *Id.*  The Court has reviewed Petitioner's statement of additional

20   grounds and it does not appear to the Court that Petitioner fairly presented Grounds 2, 9, and 14

21   therein.  *See* Dkt. 35, Exs. 6, 7.  However, even if Petitioner had properly presented those

22   grounds to the Court of Appeals on direct appeal in his statement of additional grounds for

23   review, the Court agrees that Petitioner's attempt to incorporate by reference any claims raised in

his statement of additional grounds in his petition for review to the Washington Supreme Court would not constitute fair presentation.

Specifically, the Court notes that, in the petition for review to the Washington Supreme Court, the only reference made to the arguments raised in Petitioner's statement of additional grounds is that Petitioner "requests this Court review each issue raised in his Statement of Additional Grounds." Dkt. 35, Ex. 8, at 195. In *Baldwin*, 541 U.S. at 30-32, the Supreme Court observed that federal habeas corpus law does not require a state court judge to read through lower court opinions or briefing to discover the existence of a federal claim. "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 32.

In some circumstances, incorporation by reference of a prior court document may satisfy the exhaustion requirement. In *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted), the Ninth Circuit explained that fair and full presentation satisfying exhaustion occurs with presentation of a federal constitutional claim "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim[.]" In *Insyxiengmay*, the petitioner presented to the state supreme court three federal constitutional claims in an appendix consisting of a full copy of his personal restraint petition, and devoted the body of his motion for discretionary review to the state appellate court's dismissal on the grounds of timeliness. *Id.* Noting that the appendix contained the arguments as to the constitutional claims, the court found clear presentation of those claims as federal issues to the state supreme court. *Id.* The court distinguished cases involving arguments relying on documents never presented to the higher court, noting that *Insyxiengmay*, in the appendix filed in

1   the state supreme court, "presented extensive argument in support of all three claims as well as

2   citations to the requisite authority and to relevant parts of the record." *Id*. at 668-69.

3       This Court has found exhaustion where a petitioner's motion seeking discretionary

4   review identifies an issue for review and attaches briefs or other documents to the petition that

5   contain the arguments in support of the issue. *See, e.g., Silva v. Holbrook*, No. C16-0378-JCC-

6   MAT, 2016 WL 8235139 at *6 (W.D. Wash. Nov. 2, 2016), *report and recommendation*

7   *adopted*, 2017 WL 568822 (W.D. Wash. Feb. 13, 2017) (in motion for discretionary review

8   petitioner asserted entitlement to discharge based on "sixteen (16) discrete issues raised in the

9   operative pleadings herein[,]" and attached copies of his personal restraint petition and

10  supplemental petition); *Wiggin v. Miller-Stout*, No. C14-1474-MJP-JPD, 2015 WL 2137319 *7

11  (W.D. Wash. Mar. 20, 2015) ("[P]etitioner arguably put the Washington Supreme Court on

12  notice of his claims by reasserting them in a summary fashion in his motion for discretionary

13  review and by specifically incorporating into his motion all of the arguments contained in his

14  personal restraint petition."), *report and recommendation adopted*, 2015 WL 2137439 (W.D.

15  Wash. May 6, 2015); *see also Miller v. Quinn*, No. C07-35531, 2009 WL 117985 at *1 (9th Cir.

16  Jan. 9, 2009) (finding exhaustion where petition identified a claim, but did not refer to federal

17  constitutional issues, but relevant law addressing federal constitutional issues was discussed

18  extensively in attachments to petition).

19      This case is distinguishable from *Insyxiengmay* and the other cases cited herein because it

20  appears Petitioner did not attach the statement of additional grounds to his petition for review

21  presented to the Washington Supreme Court. *See* Dkt. 35, Ex. 8. Accordingly, even if Grounds

22  2, 9, and 14 had been raised in Petitioner's statement of additional grounds to the Court of

23  Appeals on direct review, he failed to fairly present them to the Washington Supreme Court.

1    Accordingly, Petitioner failed to fairly present Grounds 2, 9, and 14 for purposes of proper

2    exhaustion on direct appeal.

3         Petitioner also does not appear to have presented these claims in his first PRP to the

4    Court of Appeals or in his motion for discretionary review to the Washington Supreme Court.

5    *See* Dkt. 35, Exs. 11-25.  Accordingly, Petitioner also failed to fairly present Grounds 2, 9, and

6    14, for purposes of proper exhaustion in his first PRP.[4]

7         To the extent Petitioner attempted to raise these claims in his second PRP, the Court of

8    Appeals declined to review the merits of these claims, dismissing the PRP as time-barred and

9    successive.  Dkt. 36, Ex. 26-33.  The Washington Supreme Court Commissioner subsequently

10   denied review, finding the Court of Appeals properly dismissed the PRP as untimely.  *Id.*, Ex.

11   35.  A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with

12   a state procedural rule.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S.

13   at 729-35; *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986).  State courts may decline to review a

14   claim based on a state procedural default.  *See Wainwright v. Sykes*, 433 U.S. 72, 81-83 (1977).

15

---

16   [4] The Court notes that Petitioner does appear to have attempted to raise Ground 9 for the first time in a
     motion seeking to add additional evidence to his motion to modify the Washington Supreme Court
17   Commissioner's ruling denying his motion for discretionary review of his PRP – both of which were
     denied by the Chief Justice of the Washington Supreme Court.  *See* Dkt. 35, Exs. 21-24.  However, this
18   does not constitute fair presentation as Petitioner failed to present this claim in the first instance to the
     Court of Appeals in his PRP and, even if he had, he failed to present it to the Washington Supreme Court
19   in his motion for discretionary review.  Petitioner's attempt to raise this claim in the context of a motion
     to add evidence to a motion to modify the Washington Supreme Court's ruling does not constitute fair
20   presentation.  *Densmore v. Glebe*, No. C15-572-MJP-JPD, 2016 WL 3636907, at *5 (W.D. Wash. Mar.
     29, 2016), *report and recommendation adopted*, 2016 WL 3551827 (W.D. Wash. June 30, 2016)
21   ("presentation of a claim to the Supreme Court for the first time in a motion to modify does not constitute
     fair presentation of the claim for exhaustion purposes because the court has no opportunity to consider the
22   merits of the claim in that procedural context.").  *See also Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir.
     1994) (presenting a new claim to the state's highest court in a procedural context in which its merits will
23   not be considered absent special circumstances does not constitute fair presentation of the claim for
     exhaustion purposes) (citing *Castille*, 489 U.S. at 351).

1  Federal courts considering habeas petitions may not review state convictions, even for federal

2  constitutional claims, if the state court's decision procedurally barring the petitioner's claims

3  rests on an "independent and adequate" state law ground.  *Coleman*, 501 U.S. at 729; *Franklin v.*

4  *Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002) (procedural default rule bars consideration of a

5  federal claim when it is clear the state court has been presented with the federal claim but

6  declined to reach the issue for procedural reasons).  The resulting procedural bar can be express

7  or implied.  *See Bolar v. Luna*, No. C05-2029-TSZ-JPD, 2007 WL 1103933, at *10 (W.D. Wash.

8  Apr. 10, 2007).  "A state court invokes an express procedural bar by explicitly referring to a state

9  rule or procedure to deny a petitioner's claim, or by referring to a case or phrase that invokes the

10  applicable rule."  *Id.*; *see, e.g., Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001) (rule); *Park*

11  *v. California,* 202 F.3d 1146, 1149 (9th Cir. 2000) (case).  On the other hand, "[a]n implied

12  procedural bar exists when a petitioner has failed to fairly present his claims to the highest state

13  court and would now be barred from returning to do so by an adequate, independent, and

14  mandatory state procedural rule."  *Bolar*, 2007 WL 1103933, at *10 (citing *Moreno v.*

15  *Gonzalez,* 116 F.3d 409, 411 (9th Cir. 1997)).  "Procedural default is an affirmative defense, and

16  the state has the burden of showing that the default constitutes an adequate and independent

17  ground."  *Insyxiengmay*, 403 F.3d at 665–66.

18         Here, the state appellate courts expressly declined to consider the claims raised in

19  Petitioner's second PRP because the petition was time barred under a state statute.  *See* Dkt. 36,

20  Exs. 33, 35.  The Court of Appeals and Washington Supreme Court relied on Revised Code of

21  Washington (RCW) 10.73.090(1) to decline to reach the merits of the second PRP.  *See Id.*, Exs.

22  33, 35.  RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and

23  sentence in a criminal case must be filed within one year after the judgment becomes

final.  Petitioner's judgment and sentence became final on February 19, 2019; therefore, the date

to file a PRP expired on February 19, 2020.  *See Ewalan*, 139 S. Ct. 1185; RCW 10.73.090.

Petitioner did not file the motion that formed the basis for his second PRP until August 21,

2020.  *See* Dkt. 36, Ex. 26.  Thus, the second PRP was filed approximately six months after the

limitations period ran and the state appellate courts dismissed the second PRP as time-barred.

*Id*., Exs. 33, 35.  As Petitioner's second PRP was denied based on a state procedural rule, the

Court finds that, to the extent Grounds 2, 9, and 14 were raised therein, they were denied by the

state courts on an adequate and independent state law ground.  *See Shumway v. Payne*, 223 F.3d

982, 988 n. 22 (9th Cir. 2000) (RCW 10.73.090 has been found by the Ninth Circuit to be an

independent and adequate state law barring federal habeas review); *see also Castille*, 489 U.S. at

351 (holding that a claim is not fairly presented if it is presented for the first and only time in a

procedural context in which its merits would not be considered absent special exceptions).

      Furthermore, Petitioner did not properly exhaust Ground 13 because he presented the

claim to the Washington Supreme Court on direct appeal as merely an issue of state law.  Dkt.

35, Ex. 8 at 189-195.  In order to satisfy the fair presentation requirement for exhaustion

purposes, "[i]t has to be clear from the petition filed at each level in the state court system that

the petitioner is claiming the violation of the federal constitution that the petitioner subsequently

claims in the federal habeas petition."  *Galvan*, 397 F.3d at 1204.  In order to exhaust state

remedies, a petitioner must present the substance of his claim to the state courts.  *See Picard*, 404

U.S. at 278.  The claim presented to the state courts must be the substantial equivalent of the

claim presented to federal court.  *See id.*  The state courts have been given a sufficient

opportunity to hear an issue when the petitioner has presented the state court with the issue's

factual and legal basis.  *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999); *see also Kyzar*

1   *v. Ryan*, 780 F.3d 940, 947 (9th Cir. 2015) ("In order to fairly present an issue to a state court, a

2   [habeas] petitioner must present the substance of his claim to the state courts, including a

3   reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner

4   to relief.") (quotation marks and citation omitted); *Scott v. Schriro*, 567 F.3d 573, 582–83 (9th

5   Cir. 2009) (same).

6          Generally appealing to a broad constitutional provision alone is not sufficient to satisfy

7   the exhaustion requirement. *Gray v. Netherland*, 518 U.S. at 163. Under Ninth Circuit caselaw,

8   a petitioner must make the federal basis of the claim explicit either by referencing specific

9   provisions of the federal constitution or statutes or citing to federal or state cases analyzing the

10  federal constitutional issue. *See Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005); *see*

11  *also Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) ("for purposes of exhaustion, a

12  citation to a state case analyzing a federal constitutional issue serves the same purpose as a

13  citation to a federal case analyzing such an issue"); *Lyons v. Crawford*, 232 F.3d at 668, 670 (9th

14  Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001). "For a federal issue to be presented by

15  the citation of a state decision dealing with both state and federal issues relevant to the claim, the

16  citation must be accompanied by some clear indication that the case involves federal issues."

17  *Casey v. Moore*, 386 F.3d 896, 912 (9th Cir. 2004); *see also Fields v. Waddington*, 401 F.3d

18  1018, 1022 (9th Cir. 2005) ("When a petitioner does not label his claim as federal, the mere

19  citation to a state court case that engages in both a state and federal constitutional analysis does

20  not suffice to exhaust the federal claim."). "Raising a state claim that is merely similar to a

21  federal claim does not exhaust state remedies." *Fields*, 401 F.3d at 1022.

22         Here, Petitioner did not make it clear in his briefs filed at each level in the state court

23  system that he was claiming the violation of the federal constitution that he now raises in his

federal habeas petition.  First, although Petitioner appears to make one general reference to violation of his "right to a fair trial" in his brief to the state appellate courts, this general reference is insufficient to fairly present his claim as a federal constitutional violation.  *See Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir. 1999) (holding that "general appeals to broad constitutional principles, such as *due process,* equal protection, and the *right to a fair trial*, are insufficient to establish exhaustion" (emphasis added)).  Moreover, in his petition for review to the Washington Supreme Court, Petitioner does not specifically identify his claim as a federal claim or cite to any federal case law.  Dkt. 35, Ex. 8 at 189-195.  Rather, in discussing this claim in his petition for review, Petitioner cites only to state law cases and does not clearly indicate that the state cases cited involve federal issues nor does he otherwise indicate that he intends to present this claim as a federal claim.  *Id.*  Petitioner failed to fairly present Ground 13 as a federal claim for purposes of proper exhaustion on direct appeal.

Petitioner does not appear to have raised Ground 13 in his first PRP and, to the extent he attempted to raise the claim in his second PRP, as noted above, the state appellate courts dismissed the PRP as time-barred under RCW 10.73.090, which constitutes an independent and adequate state procedural ground.

In sum, Petitioner failed to properly exhaust Grounds 2, 9, 13, and 14.

                b.       *Grounds 1, 3-8, 10-12*

Respondent concedes Petitioner properly exhausted his remaining claims (Grounds 1, 3-8, and 10-12).  Accordingly, those claims will be addressed on the merits below.

                2.       *Technical Exhaustion*

As discussed above, Petitioner did not properly exhaust Grounds 2, 9, 13 and 14.  To the extent Petitioner did not raise Grounds 2, 9, 13, and 14 in his second PRP and they could not be

considered to have been expressly denied by the state courts on an adequate and independent state law ground, these claims are still technically exhausted and procedurally defaulted because, if Petitioner attempted to raise them in another PRP, the state courts would find them barred by Washington law.  Under RCW 10.73.090(1), a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final, subject to exceptions that do not apply here.  *See* RCW 10.73.100.  Here, the judgment became final on the date the United States Supreme Court denied Petitioner's timely petition for certiorari to review the decision affirming his conviction on direct appeal.  *See* RCW 10.73.090(3).  The Supreme Court denied Petitioner's timely petition for certiorari well over one year ago.  *See Ewalan*, 139 S. Ct. 1185.  It therefore appears clear that Petitioner would now be time barred from returning to the state courts to present his unexhausted claims.  *See* RCW 10.73.090.  Moreover, because Petitioner previously presented a PRP to the state courts, the state courts are unlikely to entertain another such petition.  *See* RCW 10.73.140 (successive petition bar).

Accordingly, the Court concludes that Petitioner has technically exhausted and procedurally defaulted Grounds 2, 9, 13, and 14.

### 3. *Cause and Prejudice*

Federal habeas review of petitioner's procedurally defaulted claims is barred unless he can demonstrate cause and prejudice, or a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.  To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule.  *Id.* at 753; *see also Murray*, 477 U.S. at 488 (a petitioner can demonstrate "cause" if he shows constitutionally ineffective assistance of counsel, the

1   unavailability of a factual or legal basis for a claim, or some interference by officials).  To show

2   "prejudice," petitioner "must shoulder the burden of showing, not merely that the errors at his

3   trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial

4   disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v.*

5   *Frady*, 456 U.S. 152, 170 (1982) (emphases in original).  And only in a "truly extraordinary

6   case" may the Court grant habeas relief without a showing of cause or prejudice to correct a

7   "fundamental miscarriage of justice", where a constitutional violation has resulted in the

8   conviction of a defendant who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 338 (1995);

9   *Murray*, 477 U.S. at 495-96.

10       Petitioner fails to demonstrate that any factor external to the defense prevented him from

11   complying with the state's procedural rules and, thus, he has not demonstrated cause for his

12   procedural default.  Because petitioner has not met his burden of demonstrating cause for his

13   procedural default, the Court need not determine whether there was any actual prejudice.  *See*

14   *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S.

15   527, 533 (1986)).  In addition, Petitioner makes no colorable showing of actual innocence.

16   Petitioner thus fails to demonstrate that his procedurally defaulted claims are eligible for federal

17   habeas review.  Therefore, Grounds 2, 9, 13, and 14, should be DENIED.

18   B.   Merits review

19       Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus

20   petition may be granted with respect to any claim adjudicated on the merits in state court only if

21   (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly

22   established federal law, as determined by the Supreme Court, or (2) the decision was based on an

23   unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

1   In considering claims pursuant to § 2254(d), the Court is limited to the record before the state

2   court that adjudicated the claim on the merits, and the petitioner carries the burden of proof.

3   *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011); *see also Gulbrandson v. Ryan*, 738 F.3d 976,

4   993 (9th Cir. 2013).  "When more than one state court has adjudicated a claim, [the Court

5   analyzes] the last reasoned decision."  *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir.

6   2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

7          Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition

8   only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

9   question of law, or if the state court decides a case differently than the Supreme Court has on a

10  set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

11  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if

12  the state court identifies the correct governing legal principle from the Supreme Court's

13  decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *See id.*, at

14  407-09.  The Supreme Court has made clear that a state court's decision may be overturned only

15  if the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

16  The Supreme Court has further explained that "[a] state court's determination that a claim lacks

17  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

18  correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

19  (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

20         Clearly established federal law, for purposes of AEDPA, means "the governing legal

21  principle or principles set forth by the Supreme Court at the time the state court render[ed] its

22  decision."  *Lockyer*, 538 U.S. at 71-72.  This includes the Supreme Court's holdings, not its

23  dicta.  *Id.*  "If no Supreme Court precedent creates clearly established federal law relating to the

1    legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary

2    to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d

3    952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

4          With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state

5    court's conclusion was based on "an unreasonable determination of the facts in light of the

6    evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)

7    (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A]

8    decision adjudicated on the merits in a state court and based on a factual determination will not

9    be overturned on factual grounds unless objectively unreasonable in light of the evidence

10    presented in the state-court proceedings.").  The Court presumes the state court's factual findings

11    to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing

12    evidence." *Dertke*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

13          Furthermore, on federal habeas review, even if an error of constitutional dimension is

14    established, unless it is "the rare type of error" that requires automatic reversal, a petitioner is

15    entitled to relief only if he can demonstrate that the error resulted in "actual prejudice." *Davis v.*

16    *Ayala*, 576 U.S. 257, 267-68 (2015) (internal citations and quotation marks omitted); *Brecht v.*

17    *Abrahamson*, 507 U.S. 619, 637-38 (1993).  An error results in "actual prejudice" if it "'had

18    substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht*, 507 U.S.

19    at 623, 637-38 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  The harmless-

20    error standard set forth in *Brecht* is satisfied, and petitioner is entitled to habeas relief, if the

21    court has "'grave doubt'" about whether the error had "'substantial and injurious effect or

22    influence in determining the jury's verdict.'"  *Ayala*, 576 U.S. at 267-68 (quoting *O'Neal v.*

23    *McAninch*, 513 U.S. 432, 436 (1995)).

1    With these standards in mind, the Court turns to Petitioner's remaining claims.

2        1.    *Grounds One, Three, and Six: Lt. Darrah's Testimony*

3    In Grounds 1, 3, and 6, Petitioner challenges the video deposition testimony of Lieutenant

4    Darrah.  Petitioner alleges that the deposition testimony contained perjured or false testimony

5    and violated Petitioner's right to confront witnesses, that the trial judge improperly commented

6    on the evidence, and that counsel was ineffective in failing to adequately challenge the evidence.

7    Dkt. 13 at 6-9, 13-14, 21-23.

8        *a.  False Testimony and Ineffective Assistance of Counsel*

9    Petitioner argues Lieutenant Darrah falsely testified that he saw Petitioner, a woman, and

10   a child leaving the McDonald's restaurant in a verbal altercation prior to hearing the gunshot,

11   and that, after the gunshot, he saw Petitioner take steps toward the center of the parking lot, point

12   a gun in the general direction of the woman, and then walk away without holstering the weapon.

13   Petitioner argues Lieutenant Darrah's testimony was inconsistent with the McDonald's

14   surveillance video and the testimony of another witness (Cydney Rembold-Hyde), and that the

15   prosecutor committed misconduct in allowing this false testimony.  He further appears to argue

16   his attorney was ineffective in failing to adequately challenge Lieutenant Darrah's testimony.

17   "[A] conviction obtained by knowing use of perjured testimony is fundamentally unfair,

18   and must be set aside if there is any reasonable likelihood that the false testimony could have

19   affected the judgment of the jury." *United States v. Agurs*, 427 U.S 97, 103 (1975) (footnotes

20   omitted); *Giglio v. United States*, 405 U.S. 150, 153 (1972).  "[T]he knowing use of false

21   testimony to obtain a conviction violates due process regardless of whether the prosecutor

22   solicited the false testimony or merely allowed it to go uncorrected when it appeared." *United*

23

1 | *States v. Bagley*, 473 U.S. 667, 679 n.8 (1985); *Napue v. People of State of Ill.*, 360 U.S. 264,

2 | 269 (1959).

3 |       "A habeas petitioner seeking relief based on the presentation of false testimony by a

4 | prosecution witness must show not only that the witness testified falsely but also that the

5 | prosecution knew or should have known that the witness testified falsely and that the false

6 | testimony was material, *i.e.*, there is a reasonable likelihood that the false testimony affected the

7 | jury's decision." *Torres v. Ducart*, No. C14-2235, 2017 WL 2804030, at *15 (C.D. Cal. Jan 18,

8 | 2017) (citing *Gentry v. Sinclair*, 705 F.3d 884, 903 (9th Cir. 2013); *Hayes v. Ayers*, 632 F.3d

9 | 500, 520 (9th Cir. 2011); *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (*en banc*); *see also*

10 | *Bagley*, 473 U.S. at 679 n.9. However, mere inconsistencies in the evidence do not constitute the

11 | knowing use of perjured testimony by the prosecutor. *United States v. Zuno-Arce*, 44 F.3d 1420,

12 | 1423 (9th Cir. 1995).[5] "The fact that a witness may have made an earlier inconsistent statement,

13 | or that other witnesses have conflicting recollections of events, does not establish that the

14 | testimony offered at trial was false." *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997).

15 | "Discrepancies in [. . .] testimony about the details [of certain events] could as easily flow from

16 | errors in recollection as from lies." *Zuno-Arce*, 44 F.3d at 1423. A "[p]etitioner must point to

17 | something in the prosecutor's questioning, or the answers given, that may be construed as

18 | reflecting an intention by the prosecutor to mislead the jury." *Gomez v. Adams*, 555 F.Supp.2d

19 | 1070, 1091 (C.D. Cal. 2008) (citing *United States v. Etsitty*, 130 F.3d 420, 424 (9th Cir. 1997)).

20 |

21 |

22 |
23 | [5] Although Supreme Court precedent provides the only relevant source of clearly established federal law for AEDPA purposes, circuit precedent can be "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme court law," and in ascertaining "what law is 'clearly established.'" *Duhaime v. Ducharme*, 200 F.3d 597, 600–01 (9th Cir. 2000) (quoted sources omitted).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* Reviewing courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* A petitioner must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal citation and quotation marks omitted).

Defense counsel's strategic and tactical decisions "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690-91; *Pinholster*, 563 U.S. at 195. "Counsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference. . . ." *Dows*, 211 F.3d at 487; *see also Denham v. Deeds*, 954 F.2d 1501, 1505

1   (9th Cir. 1992) (counsel's determination that examining a witness could do more harm than good

2   "reflects the skill and judgment one would expect of a reasonably competent attorney.").

3         The second prong of the *Strickland* test requires a showing of actual prejudice related to

4   counsel's performance.  In order to establish prejudice, a petitioner "must show that there is a

5   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

6   would have been different.  A reasonable probability is a probability sufficient to undermine

7   confidence in the outcome."  *Strickland*, 466 at 694.  The reviewing court need not address both

8   components of the inquiry if an insufficient showing is made on one component.  *Id*. at 697.

9         While the Supreme Court established in *Strickland* the legal principles that govern claims

10  of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate

11  whether defense counsel's performance fell below the *Strickland* standard.  *Harrington*, 562 U.S.

12  at 101.  Rather, when considering an ineffective assistance of counsel claim on federal habeas

13  review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard

14  was unreasonable."  *Id*.  As the Supreme Court explained in *Harrington*, "[a] state court must be

15  granted a deference and latitude that are not in operation when the case involves review under

16  the *Strickland* standard itself."  *Id*.

17        On direct appeal, Petitioner challenged trial counsel's effectiveness in failing to object to

18  the playing of Lieutenant Darrah's video testimony at trial.  In addressing this claim, the

19  Washington Court of Appeals held:

20        Ewalan argues that his counsel was ineffective when she failed to object to
       the playing of the video testimony.

21

22        Pretrial, Ewalan had several objections to specific portions of the
       videotaped testimony of Darrah. The court addressed its concerns that it would
       not be able to redact certain portions of the tape. Ewalan responded, "Given the

23     fact that we can't redact it, I don't see any other better way, except for reading the
       transcript to the jury." The court granted the reading of the transcript instead of

playing the video. Then, Ewalan objected to a question in the testimony transcript that indicated that there had been a previous trial. The court granted the objection, redacting the question in the testimony. But, the court overruled all of Ewalan's subsequent objections to the transcript of the videotaped testimony.

At trial, it appears that the court changed course and allowed Darrah's videotaped deposition to play for the jury. Unless the question that the trial court redacted from the transcript was played for the jury, it is unclear that counsel would have had a reason to object to the video over the transcript. The record does not indicate whether that portion was played or not. Ewalan objected to the admitted testimony going back to the jury room. The parties stipulated that neither the transcript nor the video testimony would go back to the jury.

In his SAG, Ewalan argues that playing the video testimony was very prejudicial. He does not appear to argue that the court erred when it overruled his pretrial objections, and he does not articulate why playing the video was more prejudicial than the admitted transcript testimony. There is no evidence in the record that the court did not follow its previous ruling to redact the scheduling question. Ewalan has not articulated anything beyond mere prejudice inherent in adverse evidence. He has not established how his counsel was ineffective.

Dkt. 35, Ex. 2 at 35-36.

Petitioner also argued that trial counsel failed to adequately challenge Lieutenant Darrah's testimony in his first PRP. The Washington Court of Appeals rejected Petitioner's claim, stating:

Ewalan first contends that defense counsel was ineffective for failing to adequately impeach a State's witness. Andrew Darrah testified that he saw Ewalan and Mwaniki, accompanied by their children, arguing in the McDonald's parking lot, and then getting into a car. Darrah then heard a gunshot and saw Mwaniki and a child get out of the car and run screaming towards the McDonald's. Darrah saw that Ewalan had a gun down by his side. He saw Ewalan take three or four steps towards the center of the parking lot, elevate the gun and level and point it in Mwaniki's general direction. Darrah called 911 and watched as Ewalan lowered the gun but did not put it away as he walked away. Darrah testified that he was an active duty naval officer, had extensive firearms training and was an expert marksman.

Ewalan contends that defense counsel should have attempted to discredit Darrah by highlighting inconsistencies between Darrah's testimony and the testimony of other witnesses. He states that Darrah testified that he, Mwaniki and their children came out of the McDonald's together, but that surveillance video showed that he did not leave the McDonald's with Mwaniki but instead met her in the parking lot. Ewalan also argues that Darrah's testimony that he pointed the

gun at Mwaniki conflicted with the testimony of a McDonald's employee, Cydney Rembold-Hyde, who testified she never saw a gun pointed at anyone. But Darrah's testimony regarding Mwaniki's location prior to the confrontation was a trivial discrepancy. And Rembold-Hyde testified that she didn't remember if Ewalan pointed the gun, which was not inconsistent with Darrah's testimony. Ewalan fails to establish that he was prejudiced by defense counsel's failure to attempt to impeach Darrah.

Ewalan argues that he was prejudiced because Darrah's testimony was the reason that the court refused to instruct the jury on the lesser included offense of unlawful display of a firearm. He contends that if defense counsel had impeached Darrah's credibility, the trial court "may well have granted that instruction." But, as this court held in Ewalan's direct appeal, the trial court appropriately declined to give the instruction because the evidence did not support it.

> But, it is undisputed that the gun was fired. Because firing the gun
> is more than displaying it, his testimony is inconsistent with his
> requested lesser offense instruction.

And other witnesses in addition to Darrah testified that the gun was fired. Moreover, to establish prejudice, a defendant must show there is a reasonable probability that the result of the trial would have been different but for counsel's deficient performance. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). Ewalan's speculation that the trial court might have given the instruction if defense counsel had impeached Darrah's credibility is insufficient to meet the *Strickland* standard for ineffective assistance.

Dkt. 35, Ex. 16 at 538-40.

In denying review, the Washington Supreme Court agreed with the Court of Appeals' determination that Petitioner failed to show the necessary prejudice under *Strickland* to establish ineffective assistance of counsel, stating:

Mr. Ewalan and Maureen Mwaniki were married and had two children. Beginning in 2015, Mr. Ewalan threatened Ms. Mwaniki, and she called the police several times. She then moved out of the home and filed for dissolution, resulting in a court order providing for exchange of the children at certain times at a particular McDonald's parking lot. At one of the planned exchanges, Mr. Ewalan approached Ms. Mwaniki as she was getting out of her car, yelled at her, pulled a gun out of his holster, pointed the gun at her head, and fired the gun as she pushed his shoulder and ran with the children into McDonald's, yelling for help. Mr. Ewalan then fled the scene.

Several witnesses testified about the events. Ms. Mwaniki testified consistent with the facts above. A McDonald's employee testified that she saw a spark and heard a bang that sounded like people letting off fireworks, saying that she did not think anything of it until she heard a woman scream that someone had a gun and saw Ms. Mwaniki running and trying to protect herself. Bystander Andrew Darrah testified that as the woman ran screaming towards McDonald's, the man raised his gun to eye level, leveled the gun, and pointed it in the direction of the woman fleeing. Mr. Ewalan testified that Ms. Mwaniki tried to take the gun out of his holster, that the gun fired during the struggle, and that he did not know whether he or Ms. Mwaniki had fired the gun.

Mr. Ewalan primarily seeks relief based on a claim that trial counsel was ineffective, but as the acting chief judge noted, a part of that claim had already been adjudicated on direct appeal, and there was no reason in the interest of justice to revisit the issue here. As to the remaining grounds for relief, defense counsel is strongly presumed to have rendered adequate assistance. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome this presumption, Mr. Ewalan must demonstrate that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's unprofessional performance, there is a reasonable probability the outcome of the trial would have been different. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013). The acting chief judge correctly identified and applied this well-established precedent in considering Mr. Ewalan's claim in light of the record.

Mr. Ewalan largely contends that trial counsel failed to mount a sufficient defense in cross-examining and requesting a jury instruction attacking the testimony of the State's witness, Mr. Darrah. But this testimony was largely merely corroborative of Ms. Mwaniki's account of the shooting. Under these circumstances, Mr. Ewalan cannot demonstrate any prejudice arising from trial counsel's handling of Mr. Darrah's testimony. And because Mr. Ewalan has not demonstrated prejudice, his claim is frivolous as a matter of law under *Khan*.

Dkt. 35, Ex. 20 at 641-643.

Here, Petitioner fails to demonstrate he is entitled to habeas relief on the grounds that the prosecutor knowingly introduced and relied upon false testimony from Lieutenant Darrah. The record supports the state appellate court's conclusion that Lieutenant Darrah's testimony regarding Ms. Mwaniki's location prior to the confrontation was a trivial discrepancy that does not significantly undermine Lieutenant Darrah's testimony regarding the gunshot and what transpired thereafter. The record also supports the state appellate court's conclusion that there

1    was, in fact, no significant inconsistency between Ms. Rembold-Hyde's testimony and

2    Lieutenant Darrah's testimony.  While Ms. Rembold-Hyde did initially testify that she did not

3    see Petitioner point the gun, she subsequently clarified that she remembered Petitioner having the

4    gun in his hand but did not clearly remember Petitioner pointing the gun.  Dkt. 36, Ex. 44 at

5    1072-73.  Thus, the record reflects that Ms. Rembold-Hyde did not testify that Petitioner did not

6    point the gun, but only that she did not clearly remember it.  *Id.*

7         With respect to Petitioner's actions after the gunshot, although it does not appear the state

8    appellate courts separately addressed this issue specifically, Petitioner points to nothing in the

9    record to demonstrate that any of the alleged discrepancies he identifies was a product of a lie

10   rather than, at most, a simple error in Lieutenant Darrah's recollection.  Here, the alleged

11   discrepancies identified by Petitioner are insufficient to demonstrate Lieutenant Darrah's

12   testimony was materially false rather than, at most, the product of an error in recollection.  *See*

13   *Aguilar v. Ryan*, No. CV-08-1650, 2009 WL 2970621, at *7 (D. Ariz. Sept. 11, 2009) ("[A]

14   claim of prosecutorial misconduct is not made out where discrepancies in the testimony about

15   various details 'could as easily flow from errors in recollection as from lies,' and there 'is no

16   evidence whatsoever for prosecutorial misconduct except for the inference from

17   discrepancies.'") (quoting *Zuno-Arce*, 44 F.3d at 1423); *see also Lambert v. Blackwell*, 387 F.3d

18   210, 249 (3d Cir. 2004) ("Discrepancy is not enough to prove perjury.").

19        Petitioner also points to nothing in the record demonstrating that the prosecutor

20   knowingly elicited false testimony from Lieutenant Darrah, or that could reasonably be

21   construed as reflecting an intention by the prosecutor to mislead the jury through Lieutenant

22   Darrah's testimony.  Rather, the record shows the prosecutor introduced the McDonald's

23   surveillance video evidence and the eyewitness testimony of Ms. Rembold-Hyde at trial.  Dkt.

36, Ex. 44 at 1064-65, 1133-1140. Thus, all the evidence was before the jurors who were able to assess the credibility of the witnesses, including Ms. Mwaniki, Lieutenant Darrah, and Ms. Rembold-Hyde, as well as the significance or insignificance of any discrepancies in the testimony and other evidence. Accordingly, Petitioner fails to demonstrate he is entitled to habeas relief on this basis.[6]

Furthermore, to the extent Petitioner intends to allege trial counsel was ineffective in failing to adequately challenge Lieutenant Darrah's testimony based upon these alleged inconsistencies, he fails to show that he suffered prejudice. Petitioner has offered nothing to show how additional cross-examination would have altered the outcome of the trial given that all the evidence Petitioner cites as allegedly inconsistent was before the jury. The Court notes that, to the extent that Lieutenant Darrah testified to hearing a gunshot and seeing Ms. Mwaniki running away screaming, Lieutenant Darrah's testimony was largely corroborative of Ms. Mwaniki's account of the shooting (as the state appellate court found) and this testimony was also substantially corroborated by Ms. Rembold-Hyde's testimony. Petitioner fails to show there is a reasonable probability the result of the trial would have been different if defense counsel had cross-examined Lieutenant Darrah on whether Ms. Mwaniki and Petitioner were together leaving the McDonald's before the gunshot, and whether after the gunshot Petitioner pointed the gun in Ms. Mwaniki's general direction, or whether and if Petitioner holstered the weapon at some point after the gunshot. The jury saw the surveillance video evidence and heard all the relevant

---

[6] The Court notes that it directed Respondent to supplement his answer and, as necessary, the state court record to address Petitioner's argument regarding the alleged discrepancy between Lieutenant Darrah's testimony and the McDonald's surveillance video regarding Petitioner's actions after the gunshot. Dkt. 67. Respondent submitted the McDonald's surveillance video along with his supplemental answer but argues, in essence, that it is not necessary for the Court to review the substance of the video to resolve Petitioner's constitutional claims. Dkt. 68. The Court agrees with Respondent that, as explained in the analysis above, it is not necessary to review the video in order to resolve the constitutional issues that are before the Court and, therefore, the Court has not done so. *Id.*

1    testimony of the other witnesses and Petitioner fails to show any reasonable probability that

2    additional cross-examination on these particular issues would have altered the trial's outcome.[7]

3       In sum, for the reasons above, Petitioner fails to show he is entitled to habeas relief on

4    these grounds.

5         *b.   Confrontation Clause*

6       Petitioner also argues the admission of Lieutenant Darrah's video deposition at trial

7    violated his constitutional right to confront the witnesses against him.

8       The Confrontation Clause of the Sixth Amendment provides that in criminal cases, the

9    accused has the right to "be confronted with the witnesses against him[.]"  U.S. Const. amend.

10   VI.  This right applies to state court prosecutions through the Fourteenth Amendment.  *See*

11   *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  Thus, "[t]he prosecution may not offer proof of a

12   prior statement that is testimonial in nature unless (1) the accused has had, will have, or has

13   forfeited the opportunity to 'be confronted with' the witness who made the statement, and (2) the

14   witness is unavailable to testify at trial."  *United States v. Yida*, 498 F.3d 945, 950 (9th Cir.

15   2007); *see also Crawford v. Washington,* 541 U.S. 36, 68 (2004) ("[T]he Sixth Amendment

16   demands what the common law required: unavailability and a prior opportunity for cross

17   examination.").  Stated another way, "[a] witness's testimony against a defendant is thus

18   inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had

19

20   [7] The Court also notes that Petitioner does not appear to specifically argue that trial counsel should have
     challenged the admission of the video of Lieutenant Darrah's deposition testimony instead of the
21   transcript, as he appears to have done on direct appeal.  However, to the extent the petition can be
     construed to raise this claim, the record supports the state appellate court's finding that "there is no
22   evidence in the record that the [trial] court did not follow its previous ruling to redact the scheduling
     question" and that Petitioner fails to show how his counsel was ineffective.  Dkt. 35, Ex. 2 at 35-36.
23   Accordingly, Petitioner fails to show the state appellate court's conclusion that Petitioner failed to
     demonstrate ineffective assistance of counsel on this basis was contrary to or an unreasonable application
     of clearly established federal law, or an unreasonable determination of the facts.

a prior opportunity for cross-examination."  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309

(2009) (citing *Crawford*, 541 U.S. at 54).

A witness is "unavailable" under the Confrontation Clause if "the prosecutorial

authorities have made a good-faith effort to obtain [the witness's] presence at trial."  *Ohio v.*

*Roberts*, 448 U.S. 56, 74 (1980), *abrogated on other grounds by Crawford*, 541 U.S. 36 (internal

citation and quotation marks omitted); *see also Jackson v. Brown*, 513 F.3d 1057, 1083 (9th Cir.

2008) (same).  "The lengths to which the prosecution must go to produce a witness ... is a

question of reasonableness."  *Roberts*, 448 U.S. at 74 (citation omitted).

The Court of Appeals rejected Petitioner's challenge to the admission of the videotaped

deposition testimony in the context of dismissing his first PRP.  The Court stated:

> Ewalan also contends that the court erred in admitting Darrah's videotaped
> deposition testimony because the State made no good faith effort to secure
> Darrah's presence in court and thus Darrah was not "unavailable" as required by
> ER 804(b)(1).  In his deposition, Darrah testified that he was on active duty with
> the Navy, had been transferred out of the area, and was not able, due to his
> military commitments, to testify in person.  Ewalan does not show that he
> objected to the admission of Darrah's deposition at trial.  Thus, Ewalan has
> waived this claim.

Dkt. 35, Ex. 16 at 540.

The record supports the state appellate court's finding that Petitioner failed to object to

the admission of Lieutenant Darrah's deposition on the grounds that the State failed to show he

was unavailable to testify.  *See* Dkt. 36, Ex. 43 at 934-52, Ex. 44 at 1014-15, 1025, 1091, 1127-

28; Dkt. 69, Ex. 51 at 6-7.  A defendant may waive his right to confrontation "by failing to object

to the offending evidence."  *Melendez-Diaz*, 557 U.S. at 313-14 n. 3 ("The right to confrontation

may, of course, be waived, including by failure to object to the offending evidence; and States

may adopt procedural rules governing the exercise of such objections."); *see Peters v. Glebe*, No.

C12-1475-RSL-MAT, 2015 WL 13344086, at *6 (W.D. Wash. July 21, 2015), *report and*

1    *recommendation adopted in part*, 2015 WL 13344087 (W.D. Wash. Dec. 18, 2015), (state court

2    reasonably concluded Petitioner waived Confrontation Clause claim by failing to object at trial),

3    *aff'd*, 689 F. App'x 470 (9th Cir. 2017).  And waiver may generally be made by either the

4    criminal defendant or by counsel.  *See Wilson v. Gray*, 345 F.2d 282, 286 (9th Cir. 1965) ("[W]e

5    do not agree that in all cases the waiver of this right must be made by the accused personally

6    rather than by his counsel.  It has been consistently held that the accused may waive his right to

7    cross examination and confrontation and that the waiver of this right may be accomplished by

8    the accused's counsel as a matter of trial tactics or strategy.").  Thus, it appears the state

9    appellate court reasonably rejected Petitioner's claim on waiver grounds.

10        But even assuming Petitioner's Confrontation Clause claim was not waived for purposes

11    of federal habeas review, in evaluating the claim on the merits, Petitioner fails to show a

12    Confrontation Clause violation.  In federal habeas proceedings "it is the petitioner who bears the

13    burden of proving his case." *Lambert v. Blodgett*, 393 F.3d 943, 969 n. 16 (9th Cir. 2004);

14    *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) ("[I]n a habeas proceeding the petitioner 'has

15    the burden of establishing his right to federal habeas relief and of proving all facts necessary to

16    show a constitutional violation.'") (quoting *Romine v. Head,* 253 F.3d 1349, 1357 (11th Cir.

17    2001)).  Here, the record reflects, and Petitioner does not appear to substantially dispute, that

18    Lieutenant Darrah was subject to cross-examination by defense counsel during his pretrial

19    deposition.  Dkt. 69, Ex. 51 at 2-30.  Moreover, the record reflects that Lieutenant Darrah

20    testified at his deposition that he was on active duty with the Navy and was scheduled to be

21    transferred on the date trial was scheduled to begin and would therefore be unavailable to testify

22    at trial.  *Id.* at 6-7.  Petitioner presents no evidence and points to nothing in the record to indicate

23    that the prosecutor failed to make a good faith effort to secure Lieutenant Darrah's presence for

1    trial and that the transfer did not render him unavailable for Confrontation Clause purposes.

2    Rather, the only evidence in the record indicates the contrary.

3          Accordingly, Petitioner fails to establish he is entitled to habeas relief on this basis.

4                   c.   *Trial Judge's Comment on Evidence*

5          Petitioner also argues he is entitled to habeas relief because the trial judge improperly

6    commented on the evidence at trial.  Dkt. 13 at 13-14.  Specifically, he contends the trial judge

7    improperly expressed his opinion that Lieutenant Darrah's testimony was the most credible of

8    the witnesses.  *Id.*  Petitioner challenges a statement made by the trial judge in the context of the

9    following exchange regarding defense counsel's argument that Petitioner was entitled to a jury

10   instruction on the lesser included offense of unlawful display of a firearm:

11          THE COURT: Instruction number 11 is the transition instruction from first
            degree assault to second degree assault as a lesser included.  Any objection to that
12          one?

13          [PROSECUTOR]: No, your Honor.

14          [DEFENSE COUNSEL]: Your Honor, I just also proposed the lesser
            included defense [sic] of unlawful display.  I know the Court did not include that.
15          I am not sure how the Court wants to deal with that if there is –

16          THE COURT: Well, we can deal with it now or we can deal with it a little
            further on.  I don't really have a preference.  Do you want to go ahead and make
17          your argument?

18          [DEFENSE COUNSEL]: Well, I guess I would just maintain my
            argument that I previously noted for the record, that I think unlawful display of a
19          firearm is an appropriate lesser included offense.  So I think that should be
            included in the jury instructions.
20
            THE COURT: Do you want to respond?
21
            [PROSECUTOR]: I don't have anything to add to the argument I already
22          made.

23

[THE COURT]: This is something I pondered about, starting last evening and all night and most of the morning, about this unlawful display of a weapon as a lesser included.

One of the arguments that the defense has made is that there is a credibility issue here is really important. I really put a lot of thought into that.

But I think the basic problem with the instruction is the legal statement that it leads only to an inference that this offense was committed.

And that language by the case law is – I don't think I ever confronted it exactly this way before – And it's – I think it's analytically very difficult to sort of process.

But in this case, the way the defense has sort of presented the argument is the victim, the alleged victim is Maureen versus the defendant in terms of the credibility problem. There is more to it than that, because of Lieutenant Darrah's testimony. So the credibility problem is three way. It's not – well, this is me now – it's three ways, it's not two ways. And there is a different – different ways of getting to assault one based on the testimony.

There is her testimony, but there is also Lieutenant Darrah's testimony. And in this case I think it's possible for the jurors to not exactly believe her and not believe the defendant, but they could believe Lieutenant Darrah and still get to assault one.

And I think that under those circumstances offering a lesser included of unlawful display of a weapon improperly nullifies some of the evidence. I have never actually said that before in any case. And I am sort of coming to this conclusion slowly. But when you look at it, you know, I think the way the defendant testified he testified as if it's her word against his word. But that's not the evidence. That's not the totality of the evidence.

*And from the Court's purview the most credible witness in this was Lieutenant Darrah.* And if you accept his version of the facts, then the assault is not at the struggle for the gun, it's later on when the weapon is raised and pointed. That is definitely not rebutted by the testimony of the defendant.

And to say that that would be – to propose an unlawful display of weapon instruction nullifies that testimony improperly, I think.

1   Dkt. 36, Ex. 47 at 1446-50 (emphasis added).[8]

2       On federal habeas review of a claim alleging judicial bias or misconduct, the issue is

3   whether, viewed in the context of the trial as a whole, the judge's behavior rendered the trial so

4   fundamentally unfair as to violate due process. *Duckett v. Godinez*, 67 F.3d 734, 740–41 (9th

5   Cir. 1995). To succeed on such a claim on habeas review, there must be an "extremely high

6   level of interference" by the trial judge creating a "pervasive climate of partiality and

7   unfairness." *Id.* A petitioner must "overcome a presumption of honesty and integrity in those

8   serving as adjudicators[.]" *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "In the absence of any

9   evidence of some extrajudicial source of bias or partiality, neither adverse rulings nor impatient

10   remarks are generally sufficient to overcome the presumption of judicial integrity, even if those

11   remarks are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases.'"

12   *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) (quoting *Liteky v. United States*, 510

13   U.S. 540, 555 (1994)). "[J]udicial rulings alone almost never constitute a valid basis for a bias or

14   partiality motion." *Liteky,* 510 U.S. at 555.

15       Furthermore, "opinions formed by the judge on the basis of facts introduced or events

16   occurring in the course of the current proceedings, or of prior proceedings, do not constitute a

17   basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism

---

[8] The Court notes that, on direct appeal, Petitioner argued the trial court erred in refusing to instruct the jury on the lesser included offense of unlawful display of a weapon. The Washington Court of Appeals rejected Petitioner's claim finding that:

> it is undisputed that the gun was fired. Because firing the gun is more than displaying it, [Petitioner's] testimony is inconsistent with his requested lesser offense instruction. Further, given the testimony of the third parties who contradicted Ewalan's version of events, the cumulative evidence does not support an inference that <u>only</u> unlawful display of a weapon was committed. The jury would have had to disbelieve the cumulative evidence to find the lesser offense.

Dkt. 35, Ex. 2 at 30. However, Petitioner does not present this same challenge here but, instead, challenges the trial judge's comment on the evidence itself as improper. Dkt. 13 at 13-14.

1    that would make fair judgment impossible." *Liteky,* 510 U.S. at 555.  A Petitioner "would be

2    entitled to relief only if the record disclosed actual bias on the part of the trial judge or leaves the

3    reviewing court with an abiding impression that the judge's conduct projected to the jury an

4    appearance of advocacy or partiality." *Gupta v. Beard*, No. CV 14-1709-, 2015 WL 1470859, at

5    *36 (C.D. Cal. Mar. 30, 2015) (citing *United States v. Mostella,* 802 F.2d 358, 361 (9th Cir.

6    1986)).

7          Petitioner appears to argue that the mere fact that the trial judge commented on the

8    evidence in and of itself violates the Constitution and entitles him to habeas relief.  But Petitioner

9    points to no clearly established federal law, nor is the Court aware of any, establishing that any

10   judicial comment on the evidence constitutes a per se violation of the Constitution.  Moreover,

11   the trial judge's comment here was made in the context of considering the issue, raised by

12   defense counsel, of whether a jury instruction on a lesser included offense was appropriate based

13   upon the evidence in the record.  Petitioner points to nothing in the record that would indicate

14   extrajudicial bias or partiality on the part of the trial judge.  *See Liteky.* 510 U.S. at 555.

15         Moreover, the record reflects that the trial judge's comment was made outside the

16   presence of the jury and reflects an opinion formed on the basis of facts introduced at trial and

17   cannot reasonably be said to "display a deep seated favoritism or antagonism that would make

18   fair judgment impossible."  *Liteky*, 510 U.S. at 555; Dkt. 36, Ex. 47 at 1443 (reflecting that the

19   jury had been excused).  It is difficult to ascertain how such a comment, made outside of the

20   presence of the jury, could have impacted the jury or made Petitioner's trial unfair.  *See Liteky*,

21   510 U.S. at 555; *Williams v. Stewart*, 441 F.3d 1030, 1043 (9th Cir. 2006) (finding the trial

22   court's challenged remarks toward defendant did not violate due process in part because the

23   comments occurred outside the presence of the jury).

1     Accordingly, Petitioner fails to establish he is entitled to habeas relief on this basis and

2     Grounds 1, 3, and 6 should be DENIED.

3          2.     *Grounds Four, Seven, and Eight: Ineffective Assistance of Counsel*

4          In Grounds 4, 7, and 8, Petitioner raises claims alleging ineffective assistance of counsel

5     based on counsel's failure to present testimony from expert witnesses, as well as the failure to

6     interview or present testimony from other potential lay witnesses.  Dkt. 13 at 16-17, 24.

7          As discussed above, the Sixth Amendment guarantees a criminal defendant the right to

8     effective assistance of counsel.  *Strickland*, 466 U.S. 668.  Under the standard set forth in

9     *Strickland*, and discussed in more detail above, a defendant must prove (1) that counsel's

10    performance was deficient and, (2) that the deficient performance prejudiced the defense.  *Id.* at

11    687.

12         "A lawyer who fails adequately to investigate, and to introduce into evidence,

13    [information] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt

14    as to that question to undermine confidence in the verdict, renders deficient performance."  *Hart*

15    *v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999).  However, "an attorney is not required to present

16    trial testimony from every witness suggested by defendant."  *Davidson v. Sullivan*, No. C17-

17    0421, 2018 WL 2837472, at *21 (S.D. Cal. June 8, 2018), *report and recommendation adopted*

18    *sub nom.*, *Davidson v. Kernan*, 2018 WL 3913395 (S.D. Cal. Aug. 15, 2018).  "To establish

19    prejudice caused by the failure to call a witness, a petitioner must show that the witness was

20    likely to have been available to testify, that the witness would have given the proffered

21    testimony, and that the witnesses' testimony created a reasonable probability that the jury would

22    have reached a verdict more favorable to the petitioner."  *Id.* (citing *Alcala v. Woodford*, 334

23    F.3d 862, 872-73 (9th Cir. 2003)); *see also United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir.

1987) (applying *Strickland* standard and denying ineffective assistance of counsel claim where

defendant "offer[ed] no indication of what [the] witnesses would have testified to, or how their

testimony might have changed the outcome of the hearing.").  A petitioner's speculation that a

witness might have provided information helpful to the defense if interviewed is insufficient to

establish ineffective assistance of counsel.  *See Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.),

*amended by* 253 F.3d 1150 (2001); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir.

1997) ("Speculation about what [a witness] could have said is not enough to establish prejudice"

for purposes of ineffective assistance of counsel claim.").

### a.  Failure to Call Expert Witnesses

In Ground 4, Petitioner argues trial counsel was ineffective in failing to call a defense

expert witness, specifically a "gun fingerprint expert" to support the defense's theory that the

firearm accidentally discharged when the victim grabbed for the gun.  Dkt. 13 at 10.

The Washington Court of Appeals rejected Petitioner's claim that counsel was ineffective

in failing to hire an independent firearms expert on direct appeal.  Dkt. 36, Ex. 2.  Specifically, the

Court found:

> Ewalan argues that trial counsel failed to adequately investigate the case
> because for the first time, mid-trial, she argued that an independent firearms
> expert was necessary. He cites to *Hinton v. Alabama*. —— U.S. ——, 134 S. Ct.
> 1081, 188 L. Ed. 2d 1 (2014).
>
> In *Hinton*, the Supreme Court found that defense counsel's performance
> was deficient because of an inexcusable mistake of law. *Id.* at 1088-89. There,
> because counsel failed to understand the resources that state law provided him, he
> hired an expert that he himself deemed inadequate. *Id.* at 1089. The court stated
> explicitly:
>
> > We wish to be clear that the inadequate assistance of
> > counsel we find in this case does not consist of the hiring of an
> > expert who, though qualified, was not qualified enough. The
> > selection of an expert witness is a paradigmatic example of the
> > type of "strategic choic[e]" that, when made "after thorough

investigation of [the] law and facts," is "virtually unchallengeable." We do not today launch federal courts into examination of the relative qualifications of experts hired and experts that might have been hired.

*Id.* (alterations in original) (internal citation omitted) (quoting *Strickland*, 466 U.S. at 690).

Here, at trial the State asked its crime lab expert, "Can you tell us about the ease or difficulty of getting that gun—the bullet into the chamber while it's in a holster, if there wasn't one in there to begin with?" When the expert began speaking about the design of Ewalan's holster, defense counsel objected. Out of the presence of the jury, defense counsel argued that the expert would be testifying to an opinion about Ewalan's holster that he had not disclosed previously. Counsel stated that after her pretrial interview with the expert, she decided not to contact an independent expert. She added, "I think given the additional opinion and the direct weight it has on Mr. Ewalan's prior statement to detectives, as well as the defense of this case, it would be material and I would have hired an independent expert to evaluate the opinion." Ultimately, the State withdrew the question to the expert.

Ewalan's claim is similar to the ineffective assistance claim in *In re Pers. Restraint of Liu*, 188 Wn.2d 525, 397 P.3d 90 (2017). Liu claimed that his counsel should have hired a scent tracking expert to discredit the State's expert testimony. *Id.* at 545. The court noted that generally the decision whether to call a particular witness is a matter for differences of opinion and therefore presumed to be a matter of legitimate trial tactics. *Id.* It found that, because counsel did not or could not have known about the State's expert's surprise testimony, counsel's strategy to discredit the evidence through cross-examination alone was not unreasonable. *Id.*

As in *Liu*, Ewalan's counsel's cross-examination of the State's expert reveals she had a plan to discredit the State's testing of the evidence. In cross, she highlighted the expert's limited testing of Ewalan's gun, and specifically that there had been no DNA (deoxyribonucleic acid) testing. This case differs from *Hinton* because, here, defense counsel's decision to not hire an independent expert was not due to a mistake of the law. This was a legitimate trial tactic based on what she knew was at issue. When surprised by a new opinion, she demonstrated appropriate skill and knowledge, objecting, noting the new issue would have prompted her to hire an expert, noting the prejudice, and asking the court to exclude the elicited opinion. Counsel's objection prompted the State to withdraw the question. Ewalan has failed to show how counsel's decision to not hire an independent expert was error or prejudicial.

We find that counsel's decision to not hire an independent firearms expert was not ineffective assistance of counsel.

Dkt. 35, Ex. 2 at 24-26.

Petitioner appears to have raised a slight variation of this claim again in the context of the first PRP alleging that counsel provided ineffective assistance by failing to present a fingerprint or DNA expert to support his theory that the firearm discharged when Ms. Mwaniki grabbed for the gun.  In rejecting this claim, the Court of Appeals found:

> Finally, Ewalan argues that defense counsel was ineffective for failing to retain a forensic DNA or fingerprint expert. He claims that such an expert would have testified that Mwaniki's DNA or fingerprints were on the gun and would have supported his defense that the gun went off when she grabbed it. But Ewalan raised this claim in his direct appeal. This court rejected the claim, holding that Ewalan "has failed to show how counsel's decision to not hire an independent expert was error or prejudicial." A petitioner may not renew issues that were considered and rejected on direct appeal unless the interests of justice require relitigation of those issues. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994); *see also In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 491, 965 P.2d 593 (1998) ("A personal restraint petition is not meant to be a forum for relitigation of issues already considered on direct appeal."). No witness testified that Mwaniki's finger was ever on the trigger of the gun. Even Ewalan testified only that he and Mwaniki had a physical struggle and the gun discharged. Ewalan fails to establish a basis to relitigate this claim.

Dkt. 36, Ex. 16 at 543-544.

As stated above, Petitioner here argues trial counsel was ineffective in failing to call a "gun fingerprint expert" to support the defense's theory that the firearm accidentally discharged when Ms. Mwaniki grabbed for the gun.  Dkt. 13 at 10.  The record supports the state appellate court's findings and conclusions.  As the state appellate court noted, the record reflects defense counsel's decision not to hire an independent expert was a legitimate trial tactic based on what she knew was at issue from expert disclosure, and that when the prosecutor asked a question beyond the scope of what had been disclosed, defense counsel objected and the prosecutor withdrew the question.  Dkt. 36, Ex. 46 at 1336-46.  The record reflects that, instead of hiring an expert, defense counsel chose to pursue the tactic of discrediting the State's firearms expert on

REPORT AND RECOMMENDATION - 39

cross-examination by highlighting the State's expert's limited testing of Petitioner's gun, and specifically that there had been no DNA testing.  *Id.* at 1354-55.

The Court also notes that Petitioner presents no evidence, beyond his own conclusory speculation, to indicate that any expert witness would have provided testimony favorable to his defense.  Thus, even analyzing Petitioner's claims directly under *Strickland*, the Court finds that Petitioner fails to establish he is entitled to habeas relief on his ineffective assistance of counsel claim.  *See Grisby,* 130 F.3d at 373 ("Speculation about what [a witness] could have said is not enough to establish prejudice.").  Even if there were some question as to whether defense counsel's performance was deficient under *Strickland*, the Court cannot conclude that the state court's determination was itself an unreasonable application of *Strickland*.  *See Gulbrandson*, 738 F.3d at 990 ("We must uphold the state court's decision if 'fairminded jurists could disagree' as to whether it was correct.") (quoting *Harrington,* 562 U.S. at 88).

In Ground 7, Petitioner also alleges counsel provided ineffective assistance by failing to call a separate expert to challenge the eyewitness testimony of Ms. Mwaniki and Lieutenant Darrah.  Dkt. 13 at 24.  Petitioner argues generally that an expert witness should have been hired because of inconsistencies in Ms. Mwaniki's and Lieutenant Darrah's testimony.  But Petitioner presents no evidence, nor points to any in the record, demonstrating that such an expert would have provided testimony favorable to his defense, much less testimony that would have raised a reasonably probability that the outcome of the trial would have been different.  *See Grisby*, 130 F.3d at 373.  As such Petitioner also fails to demonstrate prejudice under *Strickland* and fails to establish he is entitled to habeas relief on this claim.

Petitioner also appears to argue that appellate counsel was ineffective in failing to challenge his trial attorney's effectiveness on this basis on appeal, but offers no more than a bare,

conclusory allegation to support such a claim, which is insufficient to warrant habeas relief. *See*

*James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported

by a statement of specific facts do not warrant habeas relief.") (internal citation omitted).

Moreover, as Petitioner fails to establish trial counsel provided ineffective assistance in failing to

call expert witnesses, he fails to demonstrate appellate counsel provided ineffective assistance in

failing to raise these claims on appeal. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir.

2001) (appellate counsel not ineffective for failing to raise meritless claims).

### b.  Failure to Call Lay Witnesses

In Grounds 4 and 8, Petitioner alleges trial and appellate counsel provided ineffective

assistance by failing to interview or call to testify several lay witnesses, specifically, Leigh

Sweet, Officer Shein, and "K" and "A."[9]  Dkt. 13 at 16, 24.

The state appellate courts rejected Petitioner's ineffective assistance of counsel claims

based upon the failure to interview or call these witnesses to testify.  The Court of Appeals stated

as follows:

> Ewalan next argues that defense counsel failed to call two eyewitnesses to
> testify. He states that individuals named ["K" and "A"] gave statements to
> officers, and that their version of events differed from Darrah's and would have
> therefore helped to impeach his testimony. But a personal restraint petition must
> set out the facts underlying the claim and the evidence available to support the
> factual assertions. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d
> 1086 (1992). Bare assertions and conclusory allegations are not sufficient to
> command judicial consideration and discussion in a personal restraint proceeding.
> *Rice*, 118 Wn.2d at 886 (competent, admissible evidence, such as affidavits,
> required to establish facts entitling petitioner to relief). Ewalan does not provide
> the full names of the proposed witnesses nor copies of their statements.[10] Nor

---

[9] It appears that Petitioner is referring to Lieutenant Darrah's children who, as indicated by the Court of Appeals, were minors at the time of the incident and for that reason are identified in Respondent's briefing, and will be identified by the Court herein, as "K" and "A."  Dkt. 36, Ex. 16; *see also* Dkt. 69, Ex. 51 at 8-9.

[10] [FN 3 by Court of Appeals] Though not entirely clear, it appears that Ewalan is referring to Darrah's minor children, who were 14 and 17 at the time of the crime.

does he describe how they contradict Darrah's testimony. Ewalan's unsupported assertions are insufficient to warrant relief.

Ewalan next contends that defense counsel was ineffective for failing to call an officer to testify about an interaction with a potential witness. Trial originally commenced with pre-trial motions on May 20, 2016. On May 21, 2016, prior to jury selection, the prosecutor informed the parties that Officer Gleb Shein remembered speaking to a witness named Leigh Sweet on the night of the crime. According to Officer Shein, Sweet was a juvenile who worked at McDonald's. Sweet reportedly told Officer Shein that Ewalan did not point the gun at Mwaniki but instead pointed it and fired it at the ground. Defense counsel interviewed Officer Shein on May 23, 2016. Officer Shein indicated that he gave Sweet a witness statement form to fill out, but it was never collected.

Detective Dean Thomas located Sweet in a juvenile detention facility. But when defense counsel interviewed Sweet, she denied being at the McDonald's on the night of the crime and stated she did not witness or observe anything. Evidence in the record appears to show that Officer Shein confused Sweet with Rembold-Hyde, another McDonald's employee who did witness the crime and who did testify at trial. Defense counsel moved to dismiss the charges for governmental misconduct due to the alleged failure to preserve the statement. The trial court denied the motion.

Ewalan argues that defense counsel should have called Officer Shein to testify. He argues that Officer Shein's testimony "would have opened the door to Leigh Sweet's two-page statement." But Ewalan does not explain how Officer Shein could have testified to Sweet's hearsay statements. And the record shows that Sweet was adamant she was not there on the night of the crime and did not witness anything. Under the circumstances presented here, Ewalan fails to demonstrate that defense counsel's decision not to call Officer Shein as a witness was deficient performance or resulted in prejudice.

Dkt. 36, Ex. 16 at 541-42.

In his petition, Petitioner alleges defense counsel was ineffective in failing to interview and call to testify lay witnesses "K" and "A." The record supports the state appellate court's findings and conclusions in rejecting this claim. With respect to "K" and "A", Petitioner offers no evidence and points to nothing in the record to support his conclusory allegation that "K" and "A" would have testified differently from Lieutenant Darrah and thus would have helped impeach his testimony. The state appellate court reasonably concluded that Petitioner's unsupported assertions were insufficient to warrant relief. Even if reviewed directly under the

1   *Strickland* standard, Petitioner fails to demonstrate prejudice as he fails to show these witnesses

2   were likely to have been available to testify, that they would have given testimony favorable to

3   his defense, and that their testimony would have created a reasonable probability that the jury

4   would have reached a verdict more favorable to Petitioner. *See Alcala*, 334 F.3d at 872-73;

5   *Berry*, 814 F.2d at 1409.

6         Likewise, with respect to the allegation that defense counsel was ineffective in failing to

7   interview the witnesses in the first instance, Petitioner offers no more than mere speculation that

8   the witnesses might have given helpful information if interviewed. Such speculation is

9   insufficient to demonstrate that there is a reasonable probability that, but for defense counsel's

10   failure to interview "K" and "A", the result of the proceedings would have been different. *See*

11   *Bragg*, 242 F.3d at 1087, *amended by* 253 F.3d 1150 (finding mere speculation that, had a

12   witness been interviewed, he might have given helpful information, insufficient to establish

13   ineffective assistance of counsel); *see also Dows*, 211 F.3d at 486 (rejecting an ineffective

14   assistance claim based on trial counsel's failure to interview or call an alibi witness, when there

15   was no evidence in the record that the witness would have testified favorably for the defense).

16   Accordingly, Petitioner fails to establish he is entitled to habeas relief on this basis.

17         Petitioner also alleges counsel provided ineffective assistance in failing to call Officer

18   Shein to testify regarding his interaction with a potential witness. The record supports the state

19   appellate court's findings and conclusions in rejecting this claim. As the state appellate court

20   noted, Petitioner does not explain how, if called as a witness, Officer Shein could have testified

21   to hearsay statements allegedly made by Leigh Sweet. And the record reflects that, despite

22   Officer Shein's representation to the prosecutor that Ms. Sweet had witnessed the shooting and

23   saw Petitioner shoot at the ground, when she was interviewed by defense counsel, Ms. Sweet

1   explicitly denied being present or witnessing the shooting.  Dkt. 36, Ex. 41 at 887-902, Ex. 42 at

2   906-10, Ex. 43 at 927-33.  Under the circumstances, for the same reasons articulated by the state

3   appellate court, Petitioner fails to show that defense counsel's decision not to call Officer Shein

4   as a witness was deficient performance or that, if she had called the officer to testify, there is a

5   reasonable probability that the jury would have reached a verdict more favorable to the

6   Petitioner.

7        Petitioner also alleges counsel failed to interview Leigh Sweet herself and instead relied

8   upon the representation of a detective that she denied being present at the McDonald's or

9   witnessing anything related to the shooting.  However, the record reflects that defense counsel

10  did, in fact, interview Leigh Sweet and that Ms. Sweet denied being present on the night of the

11  shooting or witnessing anything.  Dkt. 36, Ex. 42 at 906-10.  Petitioner presents no contradictory

12  evidence.  Furthermore, Petitioner presents no evidence from Ms. Sweet to indicate that, contrary

13  to her representations during her pretrial interview, she would have changed her story and

14  testified to having been present, and that her testimony would have been favorable to the

15  defense.  Accordingly, Petitioner fails to demonstrate that counsel provided ineffective

16  assistance.

17       To the extent Petitioner intends to allege ineffective assistance of appellate counsel based

18  on the failure to challenge his trial attorney's effectiveness on this basis on appeal, he again

19  offers no more than a bare, conclusory allegation to support such a claim, which is insufficient to

20  warrant habeas relief.  *See James*, 24 F.3d at 26.  Moreover, because Petitioner fails to establish

21  trial counsel provided ineffective assistance by failing to interview or call these witnesses at trial,

22  he also fails to demonstrate appellate counsel provided ineffective assistance in failing to raise

23  these claims on appeal.  *See Wildman*, 261 F.3d at 840.

REPORT AND RECOMMENDATION - 44

1    Accordingly, Petitioner fails to establish he is entitled to habeas relief on these claims and

2    Grounds 4, 7, and 8 should be DENIED.

3    3.    *Ground Five: Fourth Amendment Unlawful Search*

4    Petitioner contends his Fourth Amendment rights were violated when the State relied on

5    evidence obtained from a warrantless search of his cell phone.  Dkt. 13 at 19-20.

6    "The Fourth Amendment assures the 'right of the people to be secure in their persons,

7    houses, papers, and effects against unreasonable searches and seizures.'"  *Stone v. Powell*, 428

8    U.S. 465, 482 (1976).  Courts will exclude evidence in order to effectuate these rights.  *Id*.

9    However, the exclusionary rule itself is not a personal constitutional right.  *Id.* at 486.  The rule is

10   a judicially created remedial device designed to deter Fourth Amendment violations by law

11   enforcement personnel rather than "to redress the injury to the privacy of the victim of the search

12   or seizure, for any '[r]eparation comes too late.'"  *Id.* (quoting *Linkletter v. Walker*, 381 U.S.

13   618, 637 (1965)).  Because of this, the Supreme Court held that "where the State has provided an

14   opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be

15   granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

16   search or seizure was introduced at his trial."  *Id.* at 494; *see also Moormann v. Schriro*, 426 F.3d

17   1044, 1053 (9th Cir. 2005).

18   The federal court's inquiry is whether the petitioner had a full and fair opportunity to

19   litigate his claim, not whether he did so or even whether the claim was correctly decided.  *Ortiz–*

20   *Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (citing *Gordon v. Duran*, 895 F.2d 610,

21   613 (9th Cir. 1990)); *Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983).  To obtain relief, a

22   petitioner must demonstrate the state courts have not afforded him a full and fair opportunity to

23   litigate his Fourth Amendment claims.  *Woolery v. Arave*, 8 F.3d 1325, 1328 (9th Cir. 1993).  If

1    a state provides the processes whereby a defendant can fully and fairly litigate his Fourth

2    Amendment claim, then the petition will be denied whether or not the defendant employs those

3    processes.  *See Gordon*, 895 F.2d at 613–14 (holding that the determinative factor for the court

4    was that California law allowed for motion to suppress evidence, not whether defendant litigated

5    upon such grounds).

6         Here, Petitioner had an opportunity to litigate his unlawful search and seizure claim in the

7    state courts.  "The Washington Criminal Rules for Superior Court provide for a full and fair

8    opportunity to litigate Fourth Amendment claims."  *Hunter v. Miller-Stout*, No. C12–5517 RBL-

9    KLS, 2013 WL 1966168, at *14 (W.D. Wash. Apr. 23, 2013), *report and recommendation*

10   *adopted*, 2013 WL 1964928 (W.D. Wash. May 10, 2013); *see also* Washington State Criminal

11   Procedure Rule CrR 3.6.  Furthermore, Petitioner had an opportunity to raise the Fourth

12   Amendment claims on direct appeal or in a PRP.

13        In fact, it appears the Court of Appeals did address the warrantless search of Petitioner's

14   cell phone in the context of dismissing his first PRP, stating:

15        Ewalan next argues that officers conducted a warrantless search of his cell phone
         and obtained text messages that were introduced at trial.  He contends that defense
16       counsel was ineffective for failing to move to suppress the text messages.  Though
         not entirely clear, it appears Ewalan is referring to a series of text messages that
17       he exchanged with Mwaniki the day of the crime about the transfer of their
         children.  But Ewalan does not present any evidence showing how these text
18       messages were obtained. Nor does he explain how the text messages was
         prejudicial to him, or why the text messages could not just have easily been
19       obtained from Mwaniki's phone.  Again, Ewalan fails to establish prejudice.

20   Dkt. 35, Ex. 16 at 543.

21        As Petitioner had the opportunity to pursue his unlawful search and seizure claim,

22   Ground 5 is not cognizable under § 2254.  *See Tisnado v. United States*, 547 F.2d 452, 456 (9th

23   Cir. 1976) ("a federal court may not grant either § 2254 or § 2255 habeas corpus relief on the

basis that evidence obtained in an unconstitutional search or seizure was introduced,

respectively, at a state or federal trial where the defendant was provided an opportunity to litigate

fully and fairly his fourth amendment claim before petitioning the federal court for collateral

relief").

Furthermore, to the extent Petitioner's petition can be construed to raise a claim of

ineffective assistance of counsel based upon counsel's failure to move to suppress these text

messages from his phone, Petitioner fails to demonstrate the state appellate court's determination

that he failed to establish prejudice was contrary to or an unreasonable application of clearly

established federal law or an unreasonable determination of the facts.  *See* Dkt. 35, Exs. 16, 20.

Accordingly, the Court concludes Petitioner is not entitled to habeas relief on this basis

and Ground 5 should be DENIED.

4.    *Grounds Ten and Eleven: Accidental Discharge of Firearm*

In Grounds 10 and 11, Petitioner argues he is entitled to habeas relief because the firearm

discharged accidentally and in self-defense.  Dkt. 13 at 25-26.  Respondent argues that Petitioner

is asserting claims of actual innocence which are barred by the doctrine of *Teague v. Lane*, 489

U.S. 288 (1989), and do not state a cognizable ground for habeas relief.  Dkt. 34.

The constitutional basis for Petitioner's claims is not entirely clear but he appears to

argue either that he is actually innocent, or that the evidence presented was insufficient to

support his conviction.[11]  The Court will analyze Petitioner's claims under both theories.

---

[11] It is also not clear that Petitioner fairly presented this precise claim to the state courts.  However, as Respondent does not argue the claim is unexhausted, and the constitutional basis for Petitioner's claim is not entirely clear from the petition, the Court considers Petitioner's claim under what it views as the most reasonable interpretation of that claim based upon the arguments raised in the petition.

1                  *a. Sufficiency of the Evidence*

2          The Constitution forbids the criminal conviction of any person except upon proof of guilt

3 beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970).  When evaluating a claim

4 of insufficiency of the evidence to support a conviction, the reviewing court must decide

5 "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

6 trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

7 *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  "*Jackson* leaves juries

8 broad discretion in deciding what inferences to draw from the evidence presented at trial,

9 requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'"

10 *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319).  The jury is

11 entitled to believe the State's evidence and to disbelieve the defense's evidence. *Wright v. West*,

12 505 U.S. 277, 296 (1992).  "A jury's credibility determinations are […] entitled to near-total

13 deference under *Jackson*."  *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

14          To convict Petitioner of the crime of first-degree assault, the State was required to prove

15 that Petitioner, "with intent to inflict great bodily harm", "assault[ed] [Ms. Mwaniki] with a

16 firearm or any deadly weapon or by any force or means likely to produce great bodily harm or

17 death[.]"  RCW 9A.36.011(1)(a).  This is a specific intent crime requiring proof of "intent to

18 produce a specific result, as opposed to intent to do the physical act that produces the result."

19 *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009).  Specific intent may be inferred from

20 all the facts and circumstances, including the manner in which the assault was committed and the

21 nature of the prior relationship between the alleged assailant and the victim.  *State v. Wilson*, 125

22 Wn.2d 212, 217, 883 P.2d 320 (1994).  Washington Courts use common law to define the term

23 assault.  *State v. Krup*, 36 Wn.App. 454, 457, 676 P.2d 507 (1984).  "Three definitions of assault

1  have been recognized by Washington courts: (1) an attempt, with unlawful force, to inflict bodily

2  injury upon another; (2) an unlawful touching with criminal intent; and (3) putting another in

3  apprehension of harm whether or not the actor actually intends to inflict or is incapable of

4  inflicting that harm." *State v. Hupe*, 50 Wn.App. 277, 282, 748 P.2d 263 (1988); *see also* 11

5  Wash. Prac., Pattern Jury Instr.—Crim. WPIC 35.50 (5th Ed) (Assault – Definition).

6          Considered in the light most favorable to the prosecution, the evidence was sufficient for

7  a rational jury to conclude that Petitioner assaulted Ms. Mwaniki with a firearm with intent to

8  inflict great bodily harm.  As the Court of Appeals accurately summarized, the jury heard the

9  following testimony from Ms. Mwaniki, two eyewitnesses, and Mr. Ewalan at trial:

> Mwaniki testified that Ewalan approached her in the parking lot, yelling at her in Swahili. She testified that Ewalan then pulled out his gun and pointed it at her head. Mwaniki testified that she pushed Ewalan's shoulder and he shot the gun. Mwaniki did not see where the bullet went. Mwaniki then ran with her children into the McDonald's, yelling for help. Inside McDonald's, someone handed Mwaniki a phone to tell a 911 operator what happened.
>
> […]
>
> A McDonald's employee who was outside at the time of the incident testified that she saw a spark and heard a woman screaming "he's got a gun." The employee also testified that, after she saw the spark and heard a loud bang, she saw the woman putting her hands up to cover herself and the man going towards the woman. Navy Lieutenant Andrew Darrah testified that he heard a gunshot and then saw a woman and a child screaming and running towards the McDonald's. Darrah testified that, after the gunshot, he saw the man raise and point the gun in the "general direction" of the woman.
>
> […]
>
> Mr. Ewalan testified that Mwaniki tried to take his gun out of his holster and the gun fired while they were struggling over it.

Dkt. 35, Ex. 2 at 18, 29-30; *see also* Dkt. 36, Ex. 44 at 1065-69, 1110-14; Dkt. 69, Ex. 51 at 12-14.

1    In his petition, Petitioner argues that he interviewed for a position as a security guard and

2    bought the gun in August or September of 2015 in order to improve his chances of securing a job

3    as a security guard, not to assault Ms. Mwaniki.  Dkt. 13 at 25-26.  He also argues that the fact

4    that he initially suggested to Ms. Mwaniki via text message that they meet at the Everett Police

5    Department to exchange custody of their children on the date of the incident demonstrates he did

6    not intend to harm Ms. Mwaniki.  *Id.*  But the evidence of the text messages and Petitioner's

7    testimony explaining his reasons for buying the firearm were all before the jury.  Dkt. 36, Ex. 44,

8    at 1104-09, 1374-76, 1386-89.  Viewing the record as a whole, the text message evidence and

9    Petitioner's proffered explanation for obtaining the gun did not directly contradict or

10   significantly undermine the other testimony and evidence in the record that Petitioner assaulted

11   Ms. Mwaniki.  Viewing the evidence in the light most favorable to the prosecution, the jury

12   could reasonably have found Petitioner's testimony and arguments regarding the text message

13   unpersuasive in light of the other testimony and evidence in the record supporting the conclusion

14   that Petitioner assaulted Ms. Mwaniki.

15   Petitioner also argues that the fact he called 911 after leaving the scene and returning

16   home, had a scratch on his arm, and that Ms. Mwaniki did not sustain any significant injuries,

17   supports his version of events.  Dkt. 13 at 25-26.  But, again, these facts were all before the jury

18   and do not directly contradict or significantly undermine the other testimony and evidence in the

19   record supporting the conclusion that Petitioner assaulted Ms. Mwaniki.  *See* Dkt. 36, Ex. 44 at

20   1114 (discussing minor injury to Ms. Mwaniki), 1023 (discussing scratch on Petitioner's arm);

21   Ex. 46 at 1436 (discussing 911 call).  Viewing the evidence in the light most favorable to the

22   prosecution, the jury could reasonably have considered this evidence and found it unpersuasive

23

1  in light of the other testimony and evidence in the record supporting the conclusion that

2  Petitioner assaulted Ms. Mwaniki.

3        Petitioner also points to some inconsistencies between Ms. Mwaniki's trial testimony and

4  statements she previously made during a defense interview.  Specifically, Petitioner points out

5  that in a defense interview Ms. Mwaniki denied pushing Petitioner during the incident.  Dkt. 13

6  at 26, 61.  But Ms. Mwaniki was cross-examined at trial about this previous denial and

7  maintained she had, in fact, pushed Petitioner's shoulder.  Dkt. 36, Ex. 44 at 1120-21.  Viewing

8  the record as a whole and in the light most favorable to the prosecution, a reasonable jury could

9  have found Ms. Mwaniki's testimony at trial credible despite this discrepancy, believed her

10  testimony and the other eyewitness testimony of Lieutenant Darrah and Ms. Rembold Hyde,

11  regarding hearing a gunshot and seeing Ms. Mwaniki running away trying to protect herself and

12  screaming for help, and rejected the testimony and arguments of Petitioner.

13        Petitioner also points to Ms. Mwaniki's answers during her defense interview that when

14  asked if she ever got a "clear visual of the gun" she answered "no" and when asked "did you

15  ever see it?" she answered "no."  Dkt. 13 at 62.  However, the transcript of the defense interview

16  itself, which Petitioner purports to attach to his petition, does not appear to have been admitted

17  into evidence and it is unclear whether it was submitted or considered as part of the record before

18  the state appellate courts.  But even if the defense interview were part of the record and properly

19  before the Court, the rest of the interview reflects that Ms. Mwaniki stated several times, as she

20  did at trial, that she did, in fact, see the gun.  *Id.* at 59-61; Dkt. 36, Ex. 44 at 1111.  Thus, this

21  minor inconsistency or misstatement does not undermine the ample evidence supporting

22  Petitioner's conviction.

23

1    In sum, viewing the evidence in the light most favorable to the prosecution, a rational

2  jury could have found the essential elements of the crime beyond a reasonable doubt.

3  Accordingly, Petitioner fails to establish he is entitled to habeas relief on this basis.

4    b.  *Actual Innocence*

5    The Supreme Court held in *Teague*, 489 U.S. at 310-12, that, generally, a new

6  constitutional rule of criminal procedure announced after a defendant's conviction becomes final

7  cannot be applied retroactively on federal habeas review.  However, there are two exceptions to

8  the *Teague* retroactivity bar: (1) where the new rule forbids criminal punishment of "certain

9  kinds of primary individual conduct" or (2) where the new rule is a "watershed" rule of criminal

10  procedure.  *Id.*; *see also Caspari v. Bohlen*, 510 U.S. 383, 389, 396 (1994).  Thus, *Teague*

11  applies to bar retroactive application of procedural rules, not substantive rules.  *Montgomery v.*

12  *Louisiana*, 577 U.S. 190, 200 (2016) ("hold[ing] that when a new substantive rule of

13  constitutional law controls the outcome of a case, the Constitution requires state collateral review

14  courts to give retroactive effect to that rule"); *Schriro v. Summerlin*, 542 U.S. 348, 352 & n.4

15  (2004).  A freestanding actual innocence claim is a substantive claim, not a procedural rule, and

16  as such it appears it would not be barred by *Teague*.  *See Quiroz v. Pfeiffer*, No. C14-7826, 2021

17  WL 3816358, at *5 (C.D. Cal. May 14, 2021) ("Petitioner's claim of actual innocence, however,

18  is a substantive claim, not one based on a new procedural rule. Therefore, it is not barred by

19  Teague."), *report and recommendation adopted*, No. C14-7826, 2021 WL 3796433 (C.D. Cal.

20  Aug. 26, 2021); *Golay v. Warden*, No. C14-5087, 2016 WL 7046783, at *6 (C.D. Cal. Sept. 29,

21  2016) ("A freestanding actual innocence claim is a substantive claim and

22  is not barred by *Teague*."), *report and recommendation adopted*, 2016 WL 7046583 (C.D. Cal.

23  Dec. 2, 2016).

1    The Supreme Court has not definitively resolved whether a freestanding actual innocence

2    claim is cognizable in a federal habeas action.  *See McQuiggin v. Perkins*, 569 U.S. 383, 393

3    (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a

4    freestanding claim of actual innocence"); *see also Herrera v. Collins*, 506 U.S. 390, 400-17

5    (1993) (noting that "claims of actual innocence based on newly discovered evidence have never

6    been held to state a ground for federal habeas relief absent an independent constitutional

7    violation occurring in the underlying state criminal proceeding").  While the Supreme Court has

8    acknowledged the possibility that a freestanding actual innocence claim might warrant federal

9    habeas relief in a capital case, it has emphasized that it would be only upon an "extraordinarily

10   high" and "truly persuasive" threshold showing.  *Id.* at 417.

11   The Ninth Circuit has also "not resolved whether a freestanding actual innocence claim is

12   cognizable in a federal habeas corpus proceeding in the non-capital context, although [it has]

13   assumed that such a claim is viable."  *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014).

14   However, the Ninth Circuit has held that, assuming a freestanding actual innocence claim would

15   be cognizable, a habeas petitioner "must 'go beyond demonstrating doubt about his guilt and

16   must affirmatively prove that he is probably innocent.'"  *Id.* at 1246, 1251 (quoting *Carriger v.

17   Stewart*, 132 F.3d 463, 476 (9th Cir. 1997)).

18   Here, even assuming a freestanding claim of actual innocence were cognizable,

19   Petitioner's arguments fail to meet this demanding standard.  Petitioner points to no

20   "affirmative" proof of his innocence, much less "conclusive exoneration."  *Jones*, 763 F.3d at

21   1246, 1251.  Rather, at best, Petitioner appears to argue that the jury should have interpreted the

22   evidence differently and believed his testimony and version of events instead of that of the

23   prosecution's witnesses.  This falls far short of affirmative proof that Petitioner is probably

1   innocent.  *See id.* at 1251 ("Evidence that merely undercuts trial testimony or casts doubt on the

2   petitioner's guilt, but does not affirmatively prove innocence, is insufficient to merit relief on

3   a freestanding claim of actual innocence.");  *see also Carriger*, 132 F.3d at 476 (threshold for

4   a freestanding claim of actual innocence "contemplates a stronger showing than insufficiency of

5   the evidence to convict"); *Ochoa v. Thomas*, No. C11-6864, 2021 WL 3196525, at *33 (C.D.

6   Cal. June 2, 2021), *report and recommendation adopted*,  2021 WL 3190896 (C.D. Cal. July 27,

7   2021) ("To the extent that Petitioner argues that the jury got it wrong and should have believed

8   the defense witnesses, rather than [the prosecution's witness], he does not come close to

9   satisfying the 'extraordinarily high' affirmative proof of probable innocence required.")

10  (citations omitted).

11          Here, Petitioner points to no affirmative proof of probable innocence.  Rather, his claims

12  can at best be construed as a challenge to the sufficiency of the evidence or an argument that the

13  jury should have believed his testimony over that of the prosecution's witnesses.  Accordingly, to

14  the extent Petitioner intends to assert a freestanding claim of actual innocence, even assuming

15  such a claim were cognizable in a habeas action, he fails to meet the "extraordinarily high" level

16  of proof the Supreme Court has opined would be necessary to obtain habeas relief on such a

17  claim.

18          Accordingly, Petitioner fails to establish he is entitled to habeas relief on this claim and

19  Grounds 10 and 11 should be DENIED.

20          5.     *Ground Twelve: Response to Jury Question*

21          In Ground 12, Petitioner appears to challenge the trial court's response to a jury question.

22  Dkt. 13 at 27-28.  While the constitutional basis for Petitioner's claim is not entirely clear, he

23

1    appears to claim the trial court erred by failing to clarify the jury instructions related to first-

2    degree assault and the lesser included offense of second-degree assault.[12]

3        "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for

4    habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). In a habeas case, the question

5    before the Court is "whether the ailing [jury] instruction by itself so infected the entire trial that the

6    resulting conviction violates due process." *Id*. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147

7    (1973)). "Where, for example, a jury instruction relieves the prosecution of its burden in proving

8    every element of the offense beyond a reasonable doubt, the jury instruction violates due process."

9    *Roettgen v. Ryan*, 639 F. Supp. 2d 1053, 1066 (C.D. Cal. 2009) (citing *Middleton v. McNeil*, 541

10   U.S. 433, 437 (2004)). If the Court is reviewing an ambiguous instruction, the inquiry is "'whether

11   there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that

12   violates the Constitution." *Estelle*, 502 U.S. at 72 (quoting *Boyde v. California*, 494 U.S. 370, 380

13   (1990)). The challenged jury instruction "must be considered in the context of the instructions as a

14   whole and the trial record." *Id.* "A jury is presumed to follow its instructions." *Weeks v.*

15   *Angelone*, 528 U.S. 225, 234 (2000). Similarly, a jury is presumed to understand a judge's answer

16   to its question." *Id.* "To presume otherwise would require reversal every time a jury inquires

17   about a matter of constitutional significance, regardless of the judge's answer." *Id.*

18       The burden on a habeas petitioner is especially heavy where no erroneous instruction was

19   given but the claimed error is "based on the failure to give any explanation beyond the reading of

20   the statutory language itself[.]" *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). "An omission, or

21   incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* In

22

23   [12] It is also not clear that Petitioner fairly presented this precise claim to the state courts. However, as Respondent does not argue the claim is unexhausted, and the constitutional basis for Petitioner's claim is not entirely clear from the petition, the Court considers Petitioner's claim under what it views as the most reasonable interpretation of that claim based upon the arguments raised in the petition.

REPORT AND RECOMMENDATION - 55

*Weeks*, 528 U.S. 225, the Supreme Court rejected a claim that the trial judge erred in responding to a question from the jury seeking clarification on the law by referring the jury to the previously provided jury instructions. Specifically, the Court held:

> Given that petitioner's jury was adequately instructed, and given that the trial judge responded to the jury's question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry, the question becomes whether the Constitution requires anything more. We hold that it does not.

*Id.* at 234.

At trial, the trial judge provided the jury with the following instructions:

> Instruction number 6. To convict the defendant of the crime of first degree assault each of the following elements of the crime must be proved beyond a reasonable doubt.
> 1.    That on or about the 12th day of November 2015 the defendant assaulted Maureen Mwaniki.
> 2.    That the assault was committed with a firearm.
> 3.    That the defendant acted with intent to inflict great bodily harm. And.
> 4.    That this occurred in the State of Washington.
> If you find from the evidence that each of these elements have been proved beyond a reasonable doubt then it will be your duty to return a verdict of guilty.
> On the other hand, if after weighing all of the evidence you have a reasonable doubt as to anyone of these elements, then it will be your duty to return a verdict of not guilty.
>
> Instruction number 7. An assault is an intentional touching or striking or shooting of another person with unlawful force that is harmful or offensive, regardless of whether any physical injury is done to the person.
> An assault is also an act with unlawful force done with intent to inflict bodily injury upon another tending but failing to accomplish it, and accompanied with the apparent present ability to inflict the bodily injury if not prevented.
> It is not necessary that bodily injury be inflicted.
> An assault is also an act with unlawful force done with the intent to create in another apprehension and fear of bodily injury and which in fact creates in another a reasonable apprehension and immediate fear of bodily injury, even though the actor did not actually intend to inflict bodily injury.

Instruction number 8.  A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime.

Instruction number 9.  Great bodily harm means bodily injury that creates a probability of death, or that causes significant serious permanent disfigurement, or that causes a significant permanent loss or impairment of the function of any bodily part or organ.

Assault in the first degree requires that the defendant intends to inflict great bodily harm on some person.  There is no requirement that the defendant actually harmed that person.

[…]

Instruction number 11.  The defendant is charged with first degree assault. If, after full and careful deliberation on this charge you are not satisfied beyond a reasonable doubt that the defendant is guilty then you will consider whether defendant is guilty of the lesser crime of second degree assault.

When a crime has been proven against a person and there exists a reasonable doubt as to which of two or more degrees that person is guilty, he or she shall be convicted of only the lowest degree.

Instruction number 12.  To convict the defendant of the crime of second degree assault.  Each of the elements of the crime must be proved beyond a reasonable doubt.

One, that on or about the 12th day of November, 2015, the defendant assaulted Maureen Mwaniki with a deadly weapon.  And.

2.       That this occurred in the State of Washington.

If you find from the evidence that each of these elements have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence you have a reasonable doubt as to any of these elements, then it will be your duty to return a verdict of not guilty.

Dkt. 36, Ex. 47, at 1466-69.

1    The record shows the trial judge properly instructed the jury in accordance with

2    Washington law.  *See* RCW § 9A.36.011[13]; RCW § 9A.36.021[14]; 11 Wash. Prac., Pattern Jury

3    Instr.—Crim. WPIC 35.50 (5th Ed) (Assault – Definition); *Krup*, 36 Wn. App. at 457 (courts use

4    common law to define the term assault); *Hupe*, 50 Wn. App. at 282 ("Three definitions of assault

5    have been recognized by Washington courts: (1) an attempt, with unlawful force, to inflict bodily

6    injury upon another; (2) an unlawful touching with criminal intent; and (3) putting another in

7    apprehension of harm whether or not the actor actually intends to inflict or is incapable of

8    inflicting that harm.").

9    During deliberations, the jury asked the trial court whether the final paragraph in

10    instruction 7, regarding fear, applied only to the charge of second-degree assault, or also to the

11    charge of first-degree assault. Dkt. 36, Ex. 47, at 1505-10.  After discussion with the parties, the

12    trial judge responded to the jurors' question by stating: "the relevance of a particular instruction

13    is a question that must be decided by the jury themselves after reviewing the instructions as a

14    whole." Dkt. 36, Ex. 47 at 1509-10.  Petitioner did not object to the trial judge's response.[15]  *Id.*

15    Petitioner appears to argue that the trial judge should have provided more clarification in

16    responding to the jury's question.  But here, as in *Weeks*, 528 U.S. at 234, the trial judge properly

17    referred the jury back to the jury instructions which were correct under Washington law.

---

[13] RCW § 9A.36.011:
"(1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm: (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death[.]"

[14] RCW § 9A.36.021 provides, in relevant part:
"(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:[…] (c) Assaults another with a deadly weapon[.]"

[15] It also does not appear Petitioner's counsel raised any objection (relevant to the issue here) to instructions, 6, 7, 11, and 12, when they were originally given. Dkt. 36, Ex. 47 at 1444-51.

1    Although in answering the jury's question the trial judge did not refer the jury to specific

2    instructions, the nature of the jury's question indicated that everyone was aware of the relevant

3    instructions, namely, the definition of assault in instruction 7, and the instructions related to the

4    elements of second-degree assault and first-degree assault.  The Court cannot conclude there is

5    any reasonable likelihood that the jury applied the jury instructions, which provided a correct

6    definition of the relevant Washington law, in a way that violates the Constitution.  Accordingly,

7    the trial judge's response did not violate due process.

8    Also, because the record makes clear the jury instructions themselves (which the Court

9    referred the jury back to) were correct, Petitioner fails to show the trial court's failure to provide

10   further clarification in responding to the jury's question had a substantial and injurious effect on

11   the outcome of the trial.  *See Brecht*, 507 U.S. at 623 (on habeas review, even where

12   constitutional error is established, reversal is required only if the error "had substantial and

13   injurious effect or influence in determining the jury's verdict.") (internal citation omitted); *Spicer*

14   *v. Gregoire*, 194 F.3d 1006, 1008 (9th Cir. 1999) ("We need not reach the constitutionality of the

15   jury instruction, however, because even assuming that it was constitutionally defective, the error

16   would be harmless, for it did not have a 'substantial and injurious effect or influence in

17   determining the jury's verdict,'" (quoting *Brecht*, 507 U.S. at 647 (internal citation omitted)).

18   Accordingly, Petitioner fails to establish he is entitled to habeas relief on this claim and

19   Ground 12 should be DENIED.

20   C.    Motions to Expand Record and For Evidentiary Hearing

21   Petitioner has also filed several motions seeking to expand the record.  Dkts. 39, 58, 59.

22   Specifically, Petitioner filed a "motion to order defendants to produce court of appeal transcript",

23   Dkt. 39, a "motion for leave to expand record under rule 7", Dkt. 58, and a motion to expand

1   record re two items", Dkt. 59.  Petitioner's motions ask the Court to direct the Respondent to

2   produce the transcript of oral argument before the Washington Court of Appeals related to his

3   direct appeal, as well as a written pretrial statement of Lieutenant Darrah allegedly created on the

4   night of the incident.  Dkts. 39, 58, 59.  Petitioner cites Rule 5, 28 U.S.C. foll. § 2254, 28 U.S.C.

5   §2254(f), and Rule 7, 28 U.S.C. foll. § 2254, as the grounds for his request.  *Id.*  Petitioner also

6   asks the Court to direct Respondent not to redact the full names of the eyewitnesses  ("K" and

7   "A") who were minors at the time of the incident.  *Id.*  Respondent opposes these motions,

8   arguing that Rule 5, 28 U.S.C. foll. § 2254 does not require the Respondent to produce these

9   documents, nor does 28 U.S.C. §2254(f) provide a basis for the Court to direct Respondent to

10  obtain the Court of Appeals transcript.  Dkts. 41, 60.  Respondent also opposes Petitioner's

11  request that he be directed not to redact the names of the minor eyewitnesses "K" and "A."  *Id.*

12          Petitioner's request that the Court direct Respondent not to redact the names of minors

13  should be denied.  Because the individuals were minors at the time of the incident, their identities

14  are understandable to both the Court and the parties, and the Court discerns no other prejudice,

15  the Court finds it appropriate to refer to these individuals by their initials herein.  Furthermore,

16  the remainder of Petitioner's motions should also be denied, for the reasons discussed below.

17  Rule 5, 28 U.S.C. foll. § 2254 provides, in relevant part:

18      (c) Contents: Transcripts. The answer must also indicate what transcripts (of
        pretrial, trial, sentencing, or post-conviction proceedings) are available, when they
19      can be furnished, and what proceedings have been recorded but not transcribed.
        The respondent must attach to the answer parts of the transcript that the
20      respondent considers relevant. The judge may order that the respondent furnish
        other parts of existing transcripts or that parts of untranscribed recordings be
21      transcribed and furnished. If a transcript cannot be obtained, the respondent may
        submit a narrative summary of the evidence.
22      (d) Contents: Briefs on Appeal and Opinions. The respondent must also file with
        the answer a copy of:
23

(1) any brief that the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post-conviction proceeding;
(2) any brief that the prosecution submitted in an appellate court relating to the conviction or sentence; and
(3) the opinions and dispositive orders of the appellate court relating to the conviction or the sentence.

28 U.S.C. § 2254(f) provides:

If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination.

Rule 5(c) directs the respondent to identify the available transcripts and to attach to the answer the parts of the transcript that the respondent considers relevant. According to the Advisory Committee Notes to Rule 5, the purpose of this provision is to "inform the court and petitioner as to what factual allegations can be checked against the actual transcripts. The transcripts include pretrial transcripts relating, for example, to pretrial motions to suppress; transcripts of the trial or guilty plea proceeding; and transcripts of any post-conviction proceedings which may have taken place." Advisory Committee Note to Rule 5, 28 U.S.C. foll. § 2254. The rule further indicates the judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished. Rule 5, 28 U.S.C. foll. § 2254.

Here, Petitioner argues Respondent should be directed to submit the transcript of the oral argument before the Court of Appeals on direct appeal because some of the comments made by the appellate judges during oral argument differ from the opinion subsequently issued by the

1    court.  But questions and comments made by the judges during oral argument do not constitute

2    factual determinations or ultimate rulings by the court; rather, the Court's final decision is set

3    forth in the written opinion affirming Petitioner's conviction.  Dkt. 35, Ex. 2.  Petitioner fails to

4    show how the appellate judges' comments and questions during oral argument would have any

5    potential relevance in resolving the issues raised in Petitioner's habeas petition.  Accordingly, the

6    Court finds no basis under Rule 5 to direct Respondent to submit the transcript of oral argument

7    before the Court of Appeals on direct appeal.

8         Similarly, 28 U.S.C. § 2254(f) directs production of the transcript necessary to determine

9    the sufficiency of the evidence supporting a state court determination of a factual issue.  Again,

10   because the oral argument before the Court of Appeals on direct appeal is not a proceeding that

11   develops facts or during which the appellate court would announce factual determinations, the

12   Court cannot conceive of, nor does Petitioner explain, how the production of that transcript

13   would have any relevance to determining the sufficiency of any state court determination of a

14   factual issue.  Accordingly, the Court also finds no basis under 28 U.S.C. § 2254(f) to direct

15   production of the transcript of oral argument before the Court of Appeals on direct appeal.

16        Petitioner also argues the Respondent should produce a pretrial statement of Lieutenant

17   Darrah created on the date of the incident.  Lieutenant Darrah provided testimony during a

18   pretrial deposition where he was subject to cross-examination and his deposition testimony was

19   presented at trial and is a part of the record before the Court. Dkt. 69, Ex. 51.  The pretrial

20   statement Petitioner refers to is not a brief, order, opinion, or trial transcript and, as such, it does

21   not appear the Respondent is required to produce such a document under the rules.  Furthermore,

22   beyond what appears to be unsupported speculation that the pretrial statement may be

23

1    inconsistent in some unspecified way with the deposition testimony, Petitioner does not identify

2    or explain the relevance of the pretrial statement to the issues raised in his habeas petition.

3    Petitioner also cites to Rule 7 as a basis for his request to expand the record to include the

4    transcript of oral argument before the Court of Appeals related to his direct appeal, and the

5    pretrial statement of Lieutenant Darrah.  A court deciding a federal habeas petition "may direct

6    the parties to expand the record by submitting additional materials relating to the petition."  Rule

7    7(a), 28 U.S.C. foll. § 2254.  Under Rule 7, the types of materials that may be submitted include,

8    but are not limited to, "letters predating the filing of the petition, documents, exhibits, and

9    answers under oath to written interrogatories propounded by the judge," and affidavits.  *Id.*;

10   Advisory Committee Notes, 1976 Adoption, Subdivision (b).  "An important purpose of habeas

11   Rule 7 is to enable a judge to rule on a petition without expending the time and resources that an

12   evidentiary hearing requires."  *Spencer v. Castro*, No. C05-2456, 2009 WL 2849726, at *2 (E.D.

13   Cal. Sept. 2, 2009) (citing Rule 7, 28 U.S.C. foll. § 2254; Advisory Committee Notes, 1976

14   Adoption).  However, "'[a]n expanded record may also be helpful when an evidentiary hearing is

15   ordered.'"  *Id.* (quoting Rule 7, 28 U.S.C. foll. § 2254; Advisory Committee Notes, 1976

16   Adoption).

17   A habeas petitioner seeking to expand the record must demonstrate entitlement to an

18   evidentiary hearing under 28 U.S.C. § 2254(e)(2), unless the petitioner demonstrates he has

19   exercised diligence in his efforts to develop the factual basis of his claims in state court

20   proceedings.  *See Holland v. Jackson*, 542 U.S. 649, 652-53 (2004).  28 U.S.C. § 2254(e)(2)

21   provides:

22   > If the applicant has failed to develop the factual basis of a claim in State court
   > proceedings, the court shall not hold an evidentiary hearing on the claim unless
23  > the applicant shows that--
   > (A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

"Diligence for purposes of the opening clause [of § 2254(e)(2)] depends upon whether [Petitioner] made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court[.]" *Williams*, 529 U.S. at 435.  "The failure to investigate or develop a claim given knowledge of the information upon which the claim is based, is not the exercise of diligence." *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005), *overruled on other grounds by Daire v. Lattimore*, 812 F.3d 766 (9th Cir. 2016).

The record reflects Petitioner was aware of, or should have been aware of, the potential existence of a pretrial statement made by Lieutenant Darrah at the time of his state court proceedings, as the record reflects Lieutenant Darrah mentioned making such a statement during his deposition testimony, which was played for the jury during the trial.  *See* Dkt. 40, at 53; Dkt. 69, Ex. 51 at 24-25.  With respect to Petitioner's request to expand the record to include the transcript of oral argument before the Court of Appeals, Petitioner fails to demonstrate how this transcript is relevant to any of the specific claims raised in his federal habeas petition.  *See* Rule 7, 28 U.S.C. foll. § 2254.  Petitioner also fails to demonstrate he exercised the requisite diligence to develop the factual basis for any claims he seeks to raise.  It is clear Petitioner was aware of the statements made during oral argument before the Court of Appeals related to his direct appeal during the course of his state court proceedings.  Petitioner's failure to develop any potential claims despite his knowledge of the information upon which the claims would be

1    based, does not constitute diligence.  Accordingly, Petitioner fails to demonstrate the requisite

2    diligence and the requirements of 28 U.S.C. § 2254(e)(2) apply.

3         With respect to both the pretrial statement of Lieutenant Darrah and the oral argument

4    transcript, Petitioner fails to show that any related claims are based upon a new rule of

5    constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was

6    previously unavailable; or a factual predicate that could not have been previously discovered

7    through the exercise of due diligence.  *See* 28 U.S.C. § 2254(e)(2)(A). Petitioner also fails to

8    show the facts underlying the claims would be sufficient to establish by clear and convincing

9    evidence that but for constitutional error, no reasonable factfinder would have found the

10   applicant guilty of the underlying offense.  *See* 28 U.S.C. § 2254(e)(2)(B).

11        Petitioner has also, at various points in his briefing, requested an evidentiary hearing in

12   this matter.  *See, e.g.*, Dkt. 45.  For the reasons discussed above related to the request to expand

13   the record under Rule 7, Petitioner fails to demonstrate he is entitled to an evidentiary hearing

14   under 28 U.S.C. § 2254(e)(2).  Furthermore, the decision to grant an evidentiary hearing is

15   generally left to the sound discretion of district courts.  *Schriro v. Landrigan*, 550 U.S. 465, 473

16   (2007); *see also* Rule 8(a), 28 U.S.C. foll. § 2254 ("[T]he judge must review the answer, any

17   transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to

18   determine whether an evidentiary hearing is warranted.").  The purpose of such a hearing is to

19   resolve disputed factual issues.  *Townsend v. Sain*, 372 U.S. 293, 309-13 (1963), *overruled in*

20   *part by Keeny v. Tamayo–Reyes*, 504 U.S. 1, 5, 11 (1993).  "[A]n evidentiary hearing is not

21   required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*,

22   137 F.3d 1172, 1176 (9th Cir. 1998).  Here, upon reviewing the record, the Court concludes that

23

1   Petitioner's claims can be resolved by reference to the state court record, and an evidentiary

2   hearing is not necessary.

3           Accordingly, Petitioner's "motion to order defendants to produce court of appeal

4   transcript", Dkt. 39, "motion for leave to expand record under rule 7", Dkt. 58, "motion to

5   expand record re two items", Dkt. 59, and his request for an evidentiary hearing should be

6   DENIED.

7   D.      "Motion for Plaintiff to File Lawsuit"

8           Petitioner has also filed a "motion for plaintiff to file a lawsuit", Dkt. 79, alleging that a

9   WSP employee, Angelique Hamann, has at various points withheld his electronic filings beyond

10  the two business days recommended by the Court and is refusing to release a "legal material CD"

11  consisting of the transcript of the Court of Appeals oral argument discussed above.  *See supra*

12  section C.  Petitioner alleges Ms. Hamann has informed him the CD is in "a proprietary format

13  which is not compatible with software" and that she is "waiting for guidance from HQs and IT

14  department."  Dkt. 79, at 2.  Petitioner alleges Ms. Hamann's actions violate his First

15  Amendment rights.  *Id.*  He asks that the Court either order the release of the CD or allow

16  Petitioner to proceed with his lawsuit against Ms. Hamann and "others."  *Id.*

17          Respondent filed a response to the motion indicating that he believes Petitioner is

18  referring to the CD of the McDonald's surveillance video Respondent filed as part of the

19  supplemental state court record and which it appears Petitioner is unable to view at the prison

20  due to a formatting issue.  *See* Dkts. 82, 83; Dkt. 69, Ex. 55; Dkt. 70.  Respondent has previously

21  implied in his briefing that he does not believe viewing of the McDonald's surveillance video is

22  necessary to the Court's disposition of Petitioner's claims and, as indicated above, the Court

23  agrees and, as such, has not reviewed the contents of the surveillance video.  *See supra* section

1   B.1.a, p. 28, n. 6.  Moreover, Respondent also previously responded to the issue of whether the

2   Court of Appeals oral argument transcript was relevant to the ultimate disposition of this

3   petition.  *See supra* section C; Dkts. 41, 60.  As discussed above, Petitioner fails to explain, nor

4   can the Court discern, how the Court of Appeals oral argument transcript is relevant to the

5   Court's analysis of Petitioner's federal habeas petition.  Accordingly, the Court concludes that

6   Petitioner's viewing of the CD, whether it consists of the oral argument transcript or the

7   McDonald's surveillance video, is not necessary to the Court's resolution of Petitioner's federal

8   habeas petition.  Furthermore, to the extent Petitioner wishes to file a separate 42 U.S.C. § 1983

9   civil rights lawsuit pertaining to this issue he is entitled to do so, but this is not a request that

10  requires this Court's ruling in a federal habeas action.

11          Accordingly, Petitioner's "motion for plaintiff to file a lawsuit", Dkt. 79, should be

12  DENIED.

13                  IV.        CERTIFICATE OF APPEALABILITY

14          A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

15  dismissal of his federal habeas petition only after obtaining a certificate of appealability from a

16  district or circuit judge.  A certificate of appealability may issue only where a petitioner has

17  made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  A

18  petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the

19  district court's resolution of his constitutional claims or that jurists could conclude the issues

20  presented are adequate to deserve encouragement to proceed further."  *Cockrell*, 537 U.S. at 327.

21  Under this standard, the Court concludes that a certificate of appealability should be DENIED.

22

23

V.   CONCLUSION

The Court recommends petitioner's amended habeas petition, Dkt. 13, be DENIED, that Petitioner's "motion to order defendants to produce court of appeal transcript", Dkt. 39, "motion for leave to expand record under rule 7", Dkt. 58, "motion to expand record re two items", Dkt. 59, "motion for plaintiff to file a lawsuit", Dkt. 79, and his request for an evidentiary hearing be DENIED, and that this action be DISMISSED with prejudice.  The Court further recommends that a certificate of appealability be DENIED.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 22, 2022**.

Dated this 28th day of March, 2022.

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION - 68